**In re Christopher J. WHELTON and Tara L. Whelton, Debtors.**

**Educational Credit Management Corporation, Plaintiff,**

v.

**Christopher J. Whelton, Defendant.**

**Bankruptcy No. 99–10735.
Adversary No. 01–1037.**

United States Bankruptcy Court,
D. Vermont.

Sept. 9, 2003.

Gary L. Franklin, Burlington, VT, for Plaintiff.

Bernard M. Lewis, Bethel, VT, for Defendant and Debtors.

## MEMORANDUM OF DECISION

*Granting Judgment In Favor Of Educational Credit Management Corporation, Vacating A Portion Of The Confirmation Order, And Vacating A Portion Of The Discharge Order*

COLLEEN A. BROWN, Bankruptcy Judge.

### I. INTRODUCTION

Plaintiff Educational Credit Management Corporation ("ECMC") commenced an adversary proceeding seeking declaratory judgment that the student loan debt owed to it by Christopher J. Whelton (the "Debtor" or "Whelton") has not been discharged.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

For the reasons set forth below, judgment is granted in favor of ECMC. To the extent the Confirmation Order indicates that the student loan debt to ECMC has been discharged by the Debtors' Chapter 13 Plan, those portions of the Order shall be vacated. Likewise, to the extent the Debtors' Discharge Order has the effect of discharging this student loan debt, it, too, shall be vacated.

### II. LEGAL ISSUES PRESENTED

The legal issues raised in this adversary proceeding are whether a creditor who failed to object to the Debtors' treatment of its claim in a chapter 13 plan is bound by the provisions of the confirmation order purporting to discharge its claim, and whether the *res judicata* effect of a confirmation order applies to all relief sought in a plan or is limited by either the specific statutory parameters applicable to chapter 13 plans or general principles of due process.

### III. FACTUAL BACKGROUND

By the time of trial, the parties had stipulated to the following facts. In 1990, Whelton obtained his juris doctor degree from Thomas Jefferson School of Law in San Diego, California. Subsequent to earning his law degree, Whelton was a shareholder of the law firm Miller Faignant & Whelton in Rutland, Vermont. During the last ten years, he practiced law in the areas of civil litigation, criminal defense, cyberlaw, insurance defense, and general liability litigation. During calendar years 1996, 1997, 1998, 1999, and 2000, Whelton earned annual salaries of $45,000, $51,000, $65,000, $51,000, and $113,000, respectively. The Debtor now resides in Encinitas, California.

In 1990, Whelton applied to Sallie Mae for a loan to consolidate his eight student loans. On July 7, 1991, Sallie Mae granted

the consolidation request, the Debtor executed a promissory note in favor of Sallie Mae (hereinafter, the "Consolidated Note"), and Sallie Mae disbursed a total of $52,229.89 to the holders of the eight loans. This consolidated loan was guaranteed by the California Student Aid Commission ("CSAC").

On or about May 19, 1999, the Debtor and his wife, Tara L. Whelton, filed for relief under chapter 13 of the Bankruptcy Code. The Debtors listed CSAC as the holder of a unsecured non-priority claim for an educational loan in the amount of $103,830.83 on their Schedule F; this student loan debt constituted the majority of the couple's unsecured debt.

The Debtor and Mrs. Whelton filed a chapter 13 plan (the "Plan"), dated May 17, 1999, which provided for "payment of 3% to all allowed unsecured claims." *See* Chapter 13 Plan at § I.4. The Plan also stated that "the confirmation of this Plan will constitute a finding that excepting the debtor's educational loans from discharge will impose an undue hardship upon the debtors." *Id.* at §. III.7. On June 29, 1999, the Debtors filed a First Amended Chapter 13 Plan that increased the dividend on all allowed unsecured claims from 3% to 5%, *see* First Amended Chapter 13 Plan at § I.4, but left the declaration of undue hardship under § III.7 unchanged. In its Confirmation Order dated June 30, 1999, this Court (Conrad, J.) found that the First Amended Plan complied with all applicable provisions of the Bankruptcy Code, had been proposed in good faith, and was not forbidden by law. The Confirmation Order specifically referred to the attached Amended Plan which contained the statement that "the confirmation of this Plan will constitute a finding that excepting the debtor's educational loans from

discharge will impose an undue hardship upon the debtors." On or about July 7, 2000, approximately one year after the Plan was confirmed, the Debtors borrowed money from a family member, paid off the full amount due under the Plan and received their discharge. At no time did Whelton ever file an adversary proceeding to determine the dischargeability of his student loan.

## IV. THE PARTIES' ARGUMENTS

ECMC, Sallie Mae's successor-in-interest, asserts that it is entitled to a judgment declaring the discharge of its debt unenforceable on four distinct grounds. First, it alleges that this Court lacked the authority to confirm the Debtors' Plan because the Plan does not comply with the requirements of the Bankruptcy Code and Rules in that it seeks to obtain relief from the student loan obligation without the filing of an adversary proceeding. Second, ECMC argues that the Debtors' Plan was not proposed in good faith and, therefore, was not confirmable. Third, ECMC asserts that the Discharge Order is void to the extent that it purports to discharge the student loan debt by means other than an adversary proceeding. Finally, ECMC argues that the Plan fails to establish that excepting Whelton's educational loan from discharge would impose an undue hardship on the Debtors, *i.e.*, that the *Brunner* [1] criteria has not been demonstrated; and that the Debtor's failure to serve it with a summons and complaint deprived ECMC of essential due process. Therefore, ECMC asks the Court to vacate the Confirmation and Discharge Orders and to declare that the Debtor's student loan has not been discharged.

---

**1.** *See Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395 (2d Cir.1987) (establishing the three-prong test for demonstrating undue hardship).

The Debtor counters that the requirements of due process have been met because ECMC (and/or its predecessor) was served with the Plan and notice of the confirmation hearing, and ECMC's failure to attend the § 341 meeting and to object to the Plan constitutes a waiver of its right to object to any provision in the Plan at this time. Further, the Debtor argues that ECMC received and accepted payments under the Plan through July 7, 2000, the date of discharge, and that acceptance bars Plaintiff's claim under the doctrine of collateral estoppel. The Debtor also asserts that since ECMC had notice of the Debtor's filing of a bankruptcy case and plan, and had an opportunity to contest provisions in the Plan, but failed to do so, it is now barred by *res judicata* from challenging the provisions of the Plan. Thus, the Debtor argues the Confirmation Order is binding on ECMC. As a corollary, the Debtor asserts that Plaintiff's claim is barred by the law of the case since the Confirmation Order *de facto* determined that excepting the student loan from discharge would constitute an undue hardship on the Debtors. Finally, the Debtor argues that the Confirmation Order cannot be revoked under § 1330,[2] even if ECMC demonstrates that this Order was procured through fraud, since the time period for invoking that provision has long since expired.[3]

At trial, the parties introduced testimony on the issues of notice, bad faith and undue hardship.[4] At the conclusion of the trial, the Court took the matter under advisement and the parties were directed to file post-trial memoranda of law. Upon consideration of the pleadings, the evidence presented and the parties' pre- and post-trial memoranda, the Court is persuaded that the salient question presented is whether the Confirmation Order alone can effect the discharge of Whelton's student loan. This is a question of law.

## V. DISCUSSION

### A. Relief Available Through a Confirmation Order is Circumscribed by the Scope of a Chapter 13 Plan

#### 1. The Scope of a Chapter 13 Plan

■ In order to determine the enforceability of the discharge ostensibly granted in the Confirmation Order, we must first determine whether the discharge of a student loan may be effected through a chapter 13 plan. Unlike chapter 11, the plan in

---

2. All statutory references are to Title 11 of the *United States Code* (the "Bankruptcy Code") unless otherwise noted.

3. The Debtor also raised a number of counterclaims, alleging violation of the discharge injunction, violation of the Fair Debt Collection Practices Act, violation of the Fair Debt Reporting Act, and consumer fraud. ECMC argued that the counterclaims raised by the Debtor under Counts II, III, and IV lacked the required nexus to the chapter 13 case and were not core proceedings. On October 17, 2002, the Court issued an order finding these counterclaims to be non-core and severing the trial on these counterclaims from the trial on ECMC's Complaint. Further, since the parties agreed at the trial that Count I of Debtor's counterclaim was integrally related to

Counts II, III and IV, the Court ordered Count I be severed as well.

4. While much of the evidence introduced at trial was relevant to the issue of whether the Debtor's circumstances, at the time of his bankruptcy filing, established undue hardship, pursuant to *Brunner, supra,* and § 523(a)(8), and although Plaintiff's Complaint expressly raised this issue, *see* Compl. at ¶ 39, neither the prayer for relief in ECMC's Complaint nor the prayer for relief in the Debtors' Counterclaim sought a determination of undue hardship. Therefore, the Court makes no determination at this time as to whether excepting the student loan from discharge would impose an undue hardship on the Debtors.

a chapter 13 case has a plainly defined boundary. The dimensions of a chapter 13 plan are clearly set forth in § 1322:

### § 1322. Contents of plan.

(a) The plan **shall**—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan **may**—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made currently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and

(10) include any other appropriate provision not inconsistent with this title.

11 U.S.C. § 1322(a) and (b) (emphasis added). Subsection (a) sets forth the mandatory components of a plan and subsection (b) lists the optional components. The tenth paragraph of subsection (b) is especially significant since it provides a debtor with a catch-all possibility, allowing a plan to include "any other appropriate provision *not inconsistent with this title.*" § 1322(b)(10) (emphasis added). On the one hand, it opens the door for a debtor to add creative provisions; on the other hand, however, it inserts a screen for the creativ-

ity, allowing entry into the plan only to those provisions which are not inconsistent with the mandates of the Bankruptcy Code. There is no specific subsection of § 1322 which permits a debtor to use his or her plan as either a vehicle for obtaining a determination of the dischargeability of a debt or as the source of his or her proof regarding the dischargeability of a debt. Thus, including a dischargeability provision in a chapter 13 plan would be proper pursuant to § 1322 only if it could get past the screen put in place by subsection (b)(10). In other words, a provision declaring the discharge of a debt can have legitimacy in the plan only if its inclusion is not inconsistent with the Bankruptcy Code.

■ Section 1328(a)(2) states unequivocally that a chapter 13 plan cannot discharge a student loan. It provides:

§ 1328. **Discharge.**

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, **except any debt—**

. . .

(2) of the kind specified in paragraph (5), (8), or (9) of section **523(a)** of this title; or

5. § 523. Exceptions to Discharge.
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . .
(8) for an *educational benefit overpayment* or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part

. . .

11 U.S.C. § 1328(a)(2) (emphasis added). Congress has clearly communicated its intent that student loans not be discharged through the chapter 13 plan process. *See also* § 523(a)(8).[5] A plan provision declaring the discharge of a student loan is an interloper in the plan; it can have no legal status.

Therefore, I find that the discharge-by-declaration provision in Whelton's plan is inconsistent with the Bankruptcy Code, is outside the scope of relief that may be effected by a chapter 13 plan, and should not have been confirmed. However, it was confirmed, hence raising the question of whether that provision of the Confirmation Order (and Discharge Order) which discharges this student loan is enforceable.

*2. The Res Judicata Effect Of A Confirmed Plan Is Limited To Those Issues That Could Have Been Properly Litigated At The Confirmation Hearing*

■ As a general rule, the contents of a chapter 13 plan operate to bind all creditors treated by the plan. *See In re Crowley,* 258 B.R. 587, 591 (Bankr.D.Vt.2000). The *res judicata* impact of a confirmation order is set forth in § 1327, which articulates the effect of confirmation:

§ 1327. **Effect of Confirmation.**

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such

by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and *the debtor's* dependents;
. . .

creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Based upon the language of this provision, the majority of courts have held that a confirmed plan is *res judicata* as to all provisions in the underlying chapter 13 plan, even if contrary to the Bankruptcy Code. *See, e.g., Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1259 (10th Cir.1999); *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir.1999), *aff'g* 218 B.R. 916 (9th Cir. BAP 1998); *see also In re Szostek*, 886 F.2d 1405 (3d Cir. 1989). I disagree and note that the Second Circuit has not yet addressed this issue. Moreover, there is a split of opinion among the circuits which have addressed discharged-by-declaration provisions.

The first decision from a circuit court setting forth what is presently the majority view on this issue is *In re Andersen*, 179 F.3d 1253 (10th Cir.1999). In *Andersen*, the debtor included a discharge-by-declaration provision in her chapter 13 plan whereby 90 percent of her student loan obligations would be discharged upon successful completion of the plan. Subsequent to the debtor completing her plan and obtaining a discharge, the student loan creditor began collection efforts against the debtor. The debtor reopened her bankruptcy case and filed an adversary proceeding complaint to determine the dischargeability of the subject student loans. The bankruptcy court granted judgment in favor of the creditor and denied discharge of the student loans:

Language in a plan does not constitute a judicial determination of hardship. [Student loan creditors] are entitled to a higher level of due process before the confirmation of the plan invokes the concept of *res judicata*. Congress' clear intent to except student loans from discharge cannot be overcome simply by inserting language into a proposed plan providing that confirmation of the plan constitutes a finding of undue hardship.

*In re Andersen*, 179 F.3d at 1254 (citing the bankruptcy court's decision). The Tenth Circuit Bankruptcy Appellate Panel (BAP) reversed the bankruptcy court, holding that confirmation of the plan constituted a finding of undue hardship, rendering the student loans dischargeable. The cornerstone of its rationale was the strong public policy favoring finality of court orders. *In re Andersen*, 215 B.R. 792 (10th Cir. BAP 1998). The Tenth Circuit affirmed the BAP's decision, again emphasizing the importance of finality, effectively endorsing the debtor's discharge-by-declaration approach. *See Andersen*, 179 F.3d at 1260; *cf., In re Talbot*, 124 F.3d 1201 (10th Cir.1997) (allowing lien stripping through a chapter 13 plan).

The Ninth Circuit Court of Appeals has granted the same discharge-by-declaration rights to debtors, but on a rationale which, I respectfully find, actually compels the opposite result. In the *Pardee* case, 193 F.3d 1083, the Ninth Circuit analyzed facts quite similar to those presented in *Andersen* and, like its neighbor circuit, endorsed a broad application of *res judicata* principles and elevated the finality of orders over the propriety of the content of orders. However, its rationale included an important refinement as to the scope of *res judicata* effect. In *Pardee*, the student loan creditor did not object to the debtors' chapter 13 plan containing a discharge-by-declaration provision regarding post-petition interest on a student loan debt. The debtors' plan was confirmed, the debtors completed their plan, and the bankruptcy court entered a discharge order. Thereafter, the student loan creditor attempted to collect the post-petition interest. The

debtors filed a motion in bankruptcy court to enjoin the student loan creditor's efforts; the bankruptcy court granted the debtors' motion. The student loan creditor appealed to the Ninth Circuit BAP. The BAP held the debtors' confirmed chapter 13 plan was *res judicata*, and the creditor's failure to object to the debtors' plan constituted a waiver of its right to challenge the discharge or collect its interest. The Ninth Circuit Court of Appeals affirmed. As rationale for this determination, both the BAP and the Court of Appeals held that " 'the Plan is *res judicata* as to *all issues that could have or should have been litigated at the confirmation hearing*,' " *id.,* 193 F.3d at 1087 (citing 9th Cir. BAP decision, 218 B.R. 916, 925) (emphasis added), "even if the confirmed bankruptcy plan contains illegal provisions." *Id.* at 1086 (citation omitted). I believe the *Pardee* rationale reflects a "fine tuning" of the *Andersen* rationale, by limiting the *res judicata* effect of a confirmation order to issues that could have or should have been litigated at the confirmation hearing. Although I disagree with the conclusion reached in *Pardee,* I agree with the Ninth Circuit's rationale that the *res judicata* effect of the confirmation order is not unlimited.

■ The dissent in the *Pardee* BAP decision deftly elucidates this point. *See Pardee,* 218 B.R. 916, 927–41 (9th Cir. BAP 1998). In his dissent, Bankruptcy Judge Klein provided a scholarly and persuasive analysis of the effect of discharge-by-declaration provisions in confirmed chapter 13 plans, asserting that the confirmed plan was not *res judicata* as to all provisions in the plan. He opined that the majority confused the concept of a binding plan provision with the concept of a discharge, pointing out that § 1327(a) cannot be used to discharge a debt that is expressly nondischargeable under § 1328(a)(2). *See id.* at 937–38. Since Congress has prescribed a strict requirement for discharging a student loan, requiring that the debtor demonstrate "undue hardship" under § 528(a)(8), and made clear that "any disagreement about the discharge status must be resolved by way of adversary proceeding," there is "a total want of jurisdiction to discharge a student loan debt by other means." *Id.* at 934. Affirming a confirmation order that includes a discharge-by-declaration provision "would license ambushes and would function as judicial legislation substituting [the court's] judgment for that of Congress by enacting a new exception to the student loan nondischargeability provision at § 523(a)(8) and by repealing part of § 1328(a)(2)." *Id.* at 927 (citation omitted). Judge Klein, therefore, concluded that the offensive discharge-by-declaration provision had no *res judicata* effect, and was, in fact, void. *See id.* at 934–35. I concur, and hold that a provision with no proper place in a chapter 13 plan has no eligibility for *res judicata* status.

■ Under § 1327, a confirmation order is *res judicata* as to all issues which were decided, or could have been decided, at the hearing on confirmation. *See In re Monahan,* 214 F.3d 275, 284–85 (2d Cir.2000); *In re Crowley,* 258 B.R. at 591. Pursuant to § 1328(a)(2), a plan does not discharge obligations excepted from discharge under § 523(a)(8). *See Stevens,* 236 B.R. at 352; *Pardee,* 218 B.R. at 935 (Klein, J., dissenting). No plan may effect a discharge and no plan provision can change the terms of the § 1328(a) discharge. Consequently, a chapter 13 plan provision purporting to discharge a nondischargeable debt cannot have *res judicata* effect since this dischargeability issue could not have been litigated at a confirmation hearing.

Here, the Debtor's student loan dischargeability provision had no right to be

in the Plan; it was a mere trespasser. The Confirmation Order enforces only those provisions of the Plan that are required or permitted to be there by the Bankruptcy Code and cannot be usurped to validate or enforce provisions that were never properly lodged in the Plan.[6] The Debtor's discharge declaration had no place in this Plan and, accordingly, it can be given no effect, even if encompassed by the Confirmation Order. *See, e.g., Banks,* 299 F.3d 296; *Kielisch v. Educ. Credit Mgmt. Corp.,* 258 F.3d 315 (4th Cir.2001); *In re Galey,* 230 B.R. 898, 899, 900 (Bankr. S.D.Ga.1999); *In re Conner,* 242 B.R. 794 (Bankr.N.H.1999); *In re Mammel,* 221 B.R. 238 (Bankr.N.D.Iowa 1998); *see also In re Ambuhl,* No. 99–10698, slip op. (Bankr.D.Vt. Nov. 30, 2001).

### B. Principles of Due Process Require an Adversary Proceeding Be Filed in Order for Dischargeability to be Determined

 Bankruptcy Rule 7001 is unequivocal that an adversary proceeding is required to determine the dischargeability of a debt. *See* Fed. R. Bankr. P. 7001(6). The procedural requirement that an adver-

sary proceeding be filed in order to address the dischargeability of a debt is absolute. An adversary proceeding provides the mechanism for bringing before a court the facts relevant for determining the dischargeability issues raised; and a consequence of a debtor's failure to follow proper procedure is a complete lack of any factual basis upon which to make a finding and grant the relief requested. *See In re C.M.R. Associates, Inc.,* 1992 WL 59029 (Bankr.D.Vt.1992) (Conrad, J.). Since the Bankruptcy Rules implementing the Bankruptcy Code specify that an adversary proceeding is the procedural *sine qua non* for a determination of dischargeability, a plan provision purporting to except a debt from discharge without an adversary proceeding is inappropriate, violates § 1322(b)(10) of the Bankruptcy Code, and is not a valid element of a chapter 13 plan. Determinations of dischargeability cannot be obtained simply by inserting a provision to that effect in a chapter 13 plan. *See In re Galey,* 230 B.R. 898, 899 (Bankr.S.D.Ga. 1999); *see also In re Ambuhl,* No. 99–10698, slip op. (Bankr.D.Vt. Nov. 30, 2001)[7]; *SallieMae Serv. v. Banks,* 271

6. While one can imagine that a debtor might relish the opportunity to impose an outrageous obligation on a particular creditor in a chapter 13 plan, § 1322 does not give the debtor *carte blanche* as to creditor treatment. If, for example, a debtor were to include a provision in a chapter 13 plan requiring a creditor to appear at the debtor's doorstep each morning to polish the debtor's shoes, there would be no question that such a plan provision is both inconsistent with the Bankruptcy Code and beyond the parameters of a chapter 13 plan. Accordingly, it would not be enforceable, even if the creditor were given proper notice, the creditor failed to object, the shoe polishing provision were included in the confirmation order, the creditor failed to appeal the confirmation order, and the discharge were entered.

7. When this Court was first called upon to address the issue of whether a student loan

discharge-by-declaration included in a confirmation order could be challenged by a creditor who failed to appear in the case or object to the plan, I ruled that the creditor was estopped from raising objections subsequent to confirmation. However, the issue before the Court then was a motion to amend the chapter 13 plan, and the ruling as to a waiver by the creditor was not determinative of the issue presented, nor did it result in the debtor being able to enforce the dischargeability term of the plan. This Court ruled therein that the amended plan would not be confirmed if it included the offensive discharge-by-declaration provision. *See In re Ambuhl,* No. 99–10698, slip op. (Bankr.D.Vt. Nov. 30, 2001). I am now persuaded that the better reasoned analysis requires courts to be more circumspect in their application of *res judicata vis a vis* chapter 13 confirmation orders. To the extent that *In re Ambuhl* is inconsistent with this Memorandum of Decision, it is over-

B.R. 249, 255 (W.D.Va.2001), *aff'd* 299 F.3d 296 (4th Cir.2002); *see generally Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Relying on due process principles, and in contrast to the holdings of the Tenth and Ninth Circuits, the Fourth Circuit has articulated what is presently the minority view, refusing to accord *res judicata* effect to a discharge-by-declaration provision in a confirmed chapter 13 plan. In *SallieMae Serv. v. Banks (In re Banks)*, 271 B.R. 249 (W.D.Va.2001), *aff'd* 299 F.3d 296 (4th Cir. 2002), the debtor sought to discharge post-petition interest on a nondischargeable student loan by including a discharge provision in his chapter 13 plan. The debtor filed several amended plans and the student loan creditor received each of the debtor's plans and the corresponding notices of hearing. The student loan creditor did not file any objection to the multiple plans, nor did it appeal any of the confirmation orders. After the debtor completed his chapter 13 plan, the bankruptcy court entered a discharge order. Thereafter, the student loan creditor sent a past due notice to the debtor demanding payment of post-petition interest. This prompted the debtor's filing of both a motion to reopen his case and an adversary proceeding seeking a declaration that the post-petition interest on his student loan had been discharged. In answering the adversary proceeding complaint, the student loan creditor asserted that any declaration discharging the post-petition student loan interest was void as a violation of its due process rights. The bankruptcy court granted the debtor summary judgment, and the student loan creditor appealed. On appeal, the district court reversed, and, consistent with Judge Klein's analysis, concluded that the debtor's chapter 13 confirmation order could not be considered *res judicata* as to the student loan interest because a determination of dischargeability requires an adversary proceeding. It held that an adversary proceeding was essential to ensure that the student loan creditor was provided sufficient notice that its rights were to be modified under the dischargeability provisions:

> While the Court recognizes that sophisticated lenders such as [the student loan creditor] should not turn a blind eye to the confirmation process, *see Linkous*, 990 F.2d at 163, neither should they fall victim to a Chapter 13 plan that flouts both bankruptcy law and the Constitution. Since [the debtor] was seeking to determine the dischargeability of a student loan debt, his creditors were entitled to a heightened degree of notice.

*Id.* at 255–56. The court concluded that "when a Chapter 13 plan contains language which not only attempts to achieve an improper goal, but does so in the absence of a proper statutory showing or adversary proceeding, the plan should not operate as *res judicata.*" *Id.* at 256. Therefore, the student loan post-petition interest due the creditor from the debtor survived the bankruptcy court's discharge order. *See id.*

---

ruled. The issue before the Court in this proceeding causes it to confront, more squarely, the question of whether a student loan purportedly discharged through a confirmation order can be enforced. The Court is persuaded that *res judicata* is not absolute as to confirmation orders, and that *res judicata* does not apply to issues that should be determined via an adversary proceeding. *See SallieMae Serv. v. Banks*, 271 B.R. 249, 255 (W.D.Va.2001), *aff'd* 299 F.3d 296 (4th Cir. 2002); *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995); *In re Beard*, 112 B.R. 951, 956 (Bankr.N.D.Ind.1990); *cf., Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993).

The instant case is strikingly similar to *Banks*. The fact that ECMC's predecessor received a timely copy of the Debtors' Plan does not validate a dischargeability provision improperly included in the Plan. *See generally In re Friedman,* 184 B.R. 883 (Bankr.N.D.N.Y.1994). This Court is persuaded that the better reasoned cases hold that *res judicata* is limited to those provisions of relief properly included in a plan. *See Banks,* 299 F.3d 296; *Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir. 1995); *In re Ruehle,* 296 B.R. 146 (Bankr. N.D.Ohio 2003). Sections 1322 and 1328 set forth the criteria for distinguishing those provisions which have *res judicata* authority from those which do not. Since the Bankruptcy Rules require an adversary proceeding be filed as a condition of student loan discharge and § 1328(a) of the Bankruptcy Code specifically states that plans cannot discharge debts described in § 523(a)(8), the fact that a debtor includes a discharge-by-declaration provision regarding a student loan in his or her chapter 13 plan is of no significance. Moreover, reiterating such a plan provision in a confirmation order neither effects the relief sought nor operates as *res judicata* as to the viability of the student loan discharge. *See In re Beard,* 112 B.R. 951, 956 (Bankr.N.D.Ind.1990).

■ The question of whether due process is satisfied when a debtor seeks to discharge a debt through the confirmation process is independent of, and distinct from, the issue of whether a chapter 13 plan is an appropriate procedural vehicle for determining dischargeability issues. Even if a discharge-by-declaration provision in a confirmation order was found to be eligible for *res judicata* effect, it would still need to pass muster under due process analysis in order for it to be enforceable. *See Banks,* 271 B.R. at 254 ("[A]n order may not operate as *res judicata* should it result in the denial of a creditor's due process rights.") (citations omitted). In this case, there is no dispute that the Debtor never commenced an adversary proceeding and never served the Creditor with a summons and complaint specifically bringing forth the issue of the Debtor's right to discharge the subject student loan. Thus, even assuming, *arguendo,* that a discharge-by-declaration provision could properly be included in a chapter 13 plan under § 1322, there is still an essential question of whether the declaration in the instant Plan afforded ECMC proper notice and the requisite due process.

In a case with remarkably similar facts, the bankruptcy court in *In re Ruehle,* 296 B.R. 146 (Bankr.N.D.Ohio 2003), held that the creditor was entitled to an order, pursuant to § 60(b)(4), vacating the discharge of the debtor's student loan on due process grounds:

> Proper notice that a student loan is subject to dischargeability arrives with service of a summons and a complaint pursuant to § 523(a)(8). Student loan creditors have limited reason to take interest in plan confirmation, but a summons and complaint to determine dischargeability sounds the alarm. The Ninth and Tenth Circuits failed to evaluate the due process concerns of a "discharge by declaration" plan provision, which resulted in an incomplete analysis of the issues. A creditor's failure to argue lack of due process does not mean that due process was accorded.

*Id.* at 157–58. I find that the Debtor's failure to serve a summons and complaint upon ECMC deprived ECMC of proper notice of the Debtor's intent to discharge the student loan and, hence, constituted an abrogation of ECMC's due process rights.

■ Moreover, to enforce the discharge obtained through a declaration in a plan not only deprives the affected creditor of due process, it erodes the bedrock integ-

rity of the bankruptcy system. The inclusion of such a provision in a plan, where it has no legitimacy, constitutes what I have categorized as "practice by ambush." *See, e.g., In re Rheaume,* 296 B.R. 313 (Bankr. D.Vt.2003). Sneaking a provision in a plan, hoping no one will notice it, and then reaping the benefits of its inclusion violates the fundamental principles of due process and of fair play, and threatens the heart of our legal, adversarial system. Enforcement of the discharge here would be tantamount to condoning a surreptitious strategy that should, in fact, be discouraged with vigor.

## C. The Creditor Has No Obligation to Object to a Discharge–by–Declaration Provision in a Chapter 13 Plan

■ ECMC's failure to file a timely objection to the Plan is of no consequence since the dischargeability provision was not confirmable as a matter of law. An order of confirmation cannot confirm provisions in a plan which exceed the legal boundaries of the plan and conflict with the mandates of the Bankruptcy Code. *See* §§ 1322 and 1328.

■ A creditor has the right to rely on the Bankruptcy Code and Rules and to expect to be accorded due process of law in accordance with the Bankruptcy Code and Rules, and the United States Constitution. The burden is on the debtor to proceed according to the mandates of the Bankruptcy Code and Rules, to include provisions in a plan only to the extent authorized by § 1322, and to file an adversary proceeding if he or she wishes relief under § 523(a)(8). *See In re Conner,* 242 B.R. 794, 799 (Bankr.N.H.1999); *In re Mammel,* 221 B.R. 238, 243 (Bankr.N.D.Iowa 1998); *In re Ruehle,* 296 B.R. 146, 157–58 (Bankr.N.D.Ohio 2003). The Debtor failed to provide the requisite notice to obtain discharge of his student loan debt. It would be an unjustifiable shifting of the

burden of proof, and a gross miscarriage of justice, to require ECMC to object to the plan in order to protect its debt from discharge.

## D. The Question of Good Faith is Moot

ECMC has questioned the Debtor's good faith and presented proof which raised the specter of whether the Debtor committed a fraud in its treatment of ECMC, praying for relief pursuant to 11 U.S.C. § 1330. However, § 1330 permits revocation of an order of confirmation only if a party in interest files a request for revocation of the confirmation order within 180 days after entry of that order and a court finds the debtor procured the confirmation of the plan by fraud. Since ECMC did not file its request within the required 180–day time frame, it is precluded from seeking relief under § 1330. Therefore, the Court reaches no determination as to the Debtor's good faith or the use of fraud in procuring the Confirmation Order.

## VI. CONCLUSION

A confirmation order can confirm only those provisions which seek relief available under a plan. Since the subject discharge-by-declaration provision in the Debtor's Plan is outside the § 1322–defined boundaries of a chapter 13 plan, and is inconsistent with express mandates of §§ 1322(b)(10) and 1328, it has no legal effect and is hereby declared void and ineffective. Consequently, that portion of the Confirmation Order which confirms the discharge of the ECMC student loan and that portion of the Discharge Order which purports to discharge Whelton's liability to ECMC are also declared void.

*Res judicata* principles do not apply to Whelton's student loan discharge-by-declaration provision. Since the Debtor failed to commence an adversary proceeding to determine whether the student loan obligation was excepted from discharge, as

required by the Bankruptcy Code and Rules, the discharge-by-declaration of Mr. Whelton's student loan in the Plan and Confirmation Order has no preclusive effect.

The Debtor's failure to commence an adversary proceeding abrogated ECMC's due process rights. Relief granted in violation of due process is unenforceable, notwithstanding a creditor's failure to object at the confirmation hearing or during the pendency of the chapter 13 plan.

Therefore, the Court grants judgment to ECMC on Counts III and IV, and declares that ECMC is not bound by those provisions of the Plan, Confirmation Order or Discharge Order which purport to discharge the subject student loan. The Court denies relief under Counts I and II as it does not find the Plan to be void or invalid *in toto*.