**In re Christopher J. WHELTON and Tara L. Whelton.**

**Educational Credit Management Corporation, Plaintiff–Appellee,**

v.

**Christopher J. Whelton, Defendant–Appellant.**

No. 2:03–cv–305.

United States District Court, D. Vermont.

Aug. 4, 2004.

---

Bernard M. Lewis, Randolph, VT, for appellant.

Gary L. Franklin, Eggleston & Cramer, Ltd., Burlington, VT, for appellee.

Kevin Jay Purcell, Albany, NY, Jan M. Sensenich, White River Jct., VT, for trustees.

*OPINION AND ORDER*

SESSIONS, Chief Judge.

The chapter 13 debtor, Christopher J. Whelton, appeals the Bankruptcy Court's

Memorandum of Decision vacating portions of orders of confirmation and discharge pertaining to his student loan debt. The bankruptcy court's decision is affirmed, for the reasons stated below.

I. *Issues on Appeal*

At issue on appeal are whether the bankruptcy court correctly ruled that "discharge by declaration" language inserted in a confirmation plan does not effectively except the debt from nondischargeability; and whether the bankruptcy court correctly ruled that failure to seek a determination of dischargeability by filing an adversary proceeding denied the creditor due process.

II. *Jurisdiction and Standard of Review*

■ This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). On review of a bankruptcy court's order, a district court functions as an appellate court and may affirm, modify, reverse or remand with instructions for further proceedings. Fed. R. Bankr.P. 8013. The dischargeability issues in this case are legal questions, which are reviewed de novo. *See Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 300 (4th Cir.2002) (whether Chapter 13 plan provision required adversary proceeding and whether confirmation process violated creditor's due process rights are legal questions); *Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 307 B.R. 28, 31 (6th Cir. BAP 2004) (bankruptcy court's conclusions of law receive de novo review on appeal).

III. *Facts*

The facts are undisputed. Appellant Christopher J. Whelton is an attorney currently living in Encinitas, California. In

1990, Whelton obtained his juris doctor degree from Thomas Jefferson School of Law in San Diego, California. Over the next ten years he practiced law in the areas of civil litigation, criminal defense, cyberlaw, insurance defense, and general liability litigation. During part of that time he was a shareholder of the law firm Faignant, Miller & Whelton in Rutland, Vermont. He also worked as a public defender in San Diego County, California and as an associate in the law firm of Kasdan Simonds Epstein & Martin of Irvine, California. During calendar years 1996, 1997, 1998, 1999 and 2000, Whelton earned annual salaries of $45,000, $65,000, $51,000 and $113,000, respectively.

In 1990, shortly after graduating from law school, Whelton consolidated his student loans through Sallie Mae. In exchange for a promissory note, Sallie Mae disbursed a total of $52,229.89 to the holders of his eight student loans. The consolidated loan was guaranteed by the California Student Aid Commission ("CSAC"), Appellee Educational Credit Management Corporation's ("ECMC") predecessor in interest.

On or about May 19, 1999, Whelton and his wife filed for relief under Chapter 13 of the Bankruptcy Code. On their Schedule F, the Wheltons listed CSAC as the holder of an unsecured non-priority claim for an educational loan in the amount of $103,830.83. This student loan debt constituted the majority of the Wheltons' unsecured debt.

The Wheltons filed a chapter 13 plan ("the Plan") dated May 17, 1999, which provided for "payment of 3% to all allowed unsecured claims," over a period of 36 months. (Chapter 13 Plan at § I.4.) The Plan also included a statement that "the

confirmation of this Plan will constitute a finding that excepting the debtor's educational loans from discharge will impose an undue hardship upon the debtors." *Id.* at § III.7.[1]

On June 29, 1999, the Wheltons filed a First Amended Chapter 13 Plan that increased the dividend on all allowed unsecured claims from 3% to 5%, but left the declaration of undue hardship unchanged. *See* First Amended Chapter 13 Plan at § I.4; § III.7. Neither the Plan nor the amended plan contains the name of creditor ECMC or its predecessor CSAC, nor does it identify the specific loan. The discharge language was contained in the seventh paragraph of a section of the Plan entitled "Other Provisions," and did not stand out in any way from the otherwise standard provisions of the Plan.

CSAC received notice of the Wheltons' Chapter 13 Plan and a Notice of Meeting of Creditors by mail on or about June 7, 1999. The notice stated that objections to the Plan must be filed by June 24, 1999, and that a confirmation hearing was scheduled for June 29, 1999. CSAC assigned the consolidated loan to ECMC on June 22, 1999. Neither CSAC nor ECMC attended the creditors' meeting or objected to the Plan. ECMC filed a proof of claim in the amount of $102,882.51 on June 29, 1999. The record does not reflect whether ECMC or CSAC received copies of the amended plan, but in any case ECMC could not have received a copy before the confirmation hearing on June 29, the same day the amended plan was filed.

The Bankruptcy Court (Conrad, J.) confirmed the Plan on June 30, 1999 in a standard order. The findings stated that the plan complied with all applicable provi-

---

1. This type of language has been referred to as "discharge by declaration." *In re Banks,* 299 F.3d at 301.

sions of the Bankruptcy Code, had been proposed in good faith, and was not forbidden by law. (Findings & Order filed July 8, 1999.) The order confirmed the Amended Plan containing the discharge by declaration language. ECMC did not appeal the confirmation order.

Approximately one year after the Plan was confirmed, the Wheltons borrowed money from a family member, paid off the full amount due under the Plan and received their discharge on July 7, 2000. The Wheltons' discharge stated specifically that "[p]ursuant to 11 U.S.C. § 1328(a) the debtors are discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502, except any debt: ... for a student loan or educational benefit overpayment as specified in 11 U.S.C. § 523(a)(8)." (Order Discharging Debtor filed July 7, 2000.) At no time did Whelton file an adversary proceeding to determine the dischargeability of his student loan.

ECMC received and accepted payment in the amount of $4,997.00 under the Plan on or about June 27, 2000. On the date of the Wheltons' discharge, ECMC was the sole holder of Whelton's consolidated loan.

Following the Wheltons' discharge from bankruptcy, ECMC attempted to collect the student loan debt by wage garnishment. The Wheltons successfully contested the wage garnishment. In a decision dated June 25, 2001, a hearing officer from the United States Department of Education reluctantly concluded that the department could not substitute its judgment for the order of the Bankruptcy Court confirming the Plan, and advised ECMC to seek review of that ruling. (Garnishment Hearing Decision at 3.)

On July 10, 2001 ECMC filed an adversary proceeding in United States Bankruptcy Court for the District of Vermont, seeking to have Whelton's consolidated student loan declared nondischargeable because (1) the bankruptcy court lacked authority to confirm a Plan with a discharge by declaration provision; (2) the Plan was proposed in bad faith and therefore not confirmable; (3) the confirmation and discharge orders were void to the extent they discharged the consolidated student loan without the filing of an adversary proceeding; and (4) the Plan contained no factual or legal basis for a finding of "undue hardship."

The Bankruptcy Court (Brown, J.) granted judgment to ECMC on the third and fourth grounds, and denied relief on the first two counts. *See Educ. Credit Mgmt. Corp. v. Whelton (In re Whelton),* 299 B.R. 306, 319 (Bankr.D.Vt.2003). This appeal followed.

### IV. *Discussion*

■ Whelton's consolidated student loan debt falls within the exception to discharge found in § 523(a)(8). Section 523(a)(8) of Title 11, United States Code, provides:

> A discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt ... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C.A. § 523(a)(8) (West 1993 & Supp.2003). Section 523(a)(8) is "self-executing," in that the creditor is not required to file a complaint to determine the nondischargeability of a student loan; rather the debtor must affirmatively secure a hard-

ship determination. *Tenn. Student Assistance Corp. v. Hood,* ——— U.S. ———, 124 S.Ct. 1905, 1912, 158 L.Ed.2d 764 (2004); S.Rep. No. 95–989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865.

 In order to obtain a determination of dischargeability of a student loan debt, the Bankruptcy Rules require a debtor to commence an adversary proceeding by filing a complaint and service of a summons and the complaint. *See TSAC,* 124 S.Ct. at 1913; Fed. R. Bankr.P. 4007(a), (e); 7001(6); 7003; 7004; *see also In re Banks,* 299 F.3d at 301 (adversary proceeding is separate dispute between debtor and creditor, subject to procedural guidelines and safeguards contained in Federal Rules of Civil Procedure). If the creditor-defendant is a corporation, summons and complaint must be served upon "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Bankr.P. 7004(b)(3). Upon receiving evidence on the issue of whether excepting the debt from discharge would impose an undue hardship, the bankruptcy court makes findings of fact and conclusions of law pursuant to Rule 7052. Fed. R. Bankr.P. 7052 (incorporating Fed.R.Civ.P. 52). In this circuit an undue hardship determination requires the debtor to establish: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans; (2) that this situation is likely to persist for a significant portion of the repayment period; and (3) that the debtor has made good faith efforts to repay the loans. *Brunner v. N.Y. State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987) (per curiam).

Whelton did not initiate an adversary proceeding; he simply inserted a statement in the Plan that excepting his student loan obligation from discharge would constitute an undue hardship. In its confirmation order, the Bankruptcy Court made no findings concerning undue hardship, and apparently no evidence was received at the confirmation hearing concerning undue hardship.

The permissible contents of a chapter 13 plan are set forth in § 1322 of Title 11, United States Code. Subsection (a) prescribes the mandatory components of a chapter 13 plan, and subsection (b) lists additional provisions that a plan may contain. *See* 11 U.S.C.A. § 1322(a), (b) (West 1993). No specific provision in § 1322 allows a debtor to circumvent the adversary proceeding required for an undue hardship determination. Under subsection (b)(10), however, a plan may "include any other appropriate provision not inconsistent with this title." *Id.* § 1322(b)(10). As the Bankruptcy Court commented, "[o]n the one hand, [subsection (b)(10) ] opens the door for a debtor to add creative provisions; on the other hand, ... it inserts a screen for the creativity, allowing entry into the plan only to those provisions which are not inconsistent with the mandates of the Bankruptcy Code." *In re Whelton,* 299 B.R. at 311–312. Whelton's "creative" discharge by declaration was appropriately in his chapter 13 plan only if the provision was not inconsistent with the Bankruptcy Code.

 Effecting a discharge of a student loan debt by means of an unsupported declaration in a chapter 13 plan is inconsistent with the Bankruptcy Code. *See Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253, 1257 (10th Cir. 1999) (discharge of student loan granted without proof of undue hardship is inconsistent with the Code); *accord In re Conner,* 242 B.R. 794, 799–800 (Bankr.D.N.H. 1999). After completion of all payments under the plan a bankruptcy court must

"grant the debtor a discharge of all debts provided for by the plan ... except any debt ... of the kind specified in paragraph ... (8) ... of section 523(a) of this title." § 1328(a)(2); *see also* § 523(a). Whelton's discharge by declaration provision was "an interloper in the plan; it can have no legal status." *In re Whelton*, 299 B.R. at 312 (quoted in *In re Ruehle*, 307 B.R. at 33).

■ A bankruptcy court lacks the authority to confirm a plan unless it complies with the provisions of Chapter 13 and with other applicable provisions of the Bankruptcy Code, 11 U.S.C.A. § 1325(a)(1) (West 1993); *see In re Escobedo*, 28 F.3d 34, 35 (7th Cir.1994). Given that Whelton's discharge by declaration provision did not comply with the provisions of § 523(a)(8) and the Federal Rules of Bankruptcy Procedure, confirmation of this provision was "nugatory." *Id.*

■■ Nevertheless, the Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C.A. § 1327(a) (West 1993). Once a bankruptcy plan is confirmed, it is binding as to all issues that were or could have been resolved during the confirmation process. *See Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1172 (9th Cir. 2004). Thus, a creditor who fails to object to a plan or to appeal a confirmation order ordinarily may not subsequently challenge a provision in a confirmed plan, even if it is inconsistent with the Code. *See id.; see also In re Szostek*, 886 F.2d 1405, 1410 (3d Cir.1989) (if creditor ignores bankruptcy proceedings, he does so at his peril).

There is precedent, not binding on a court of this Circuit, for the view that a confirmed plan containing discharge by declaration language is binding on the par-

ties. *See Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir.1999), *In re Andersen*, 179 F.3d at 1259. The strong policy favoring finality in reorganization cases has led courts to give preclusive effect to a confirmation order, even if the confirmed bankruptcy plan contains illegal provisions. *See In re Pardee*, 193 F.3d at 1086 (citing cases); *In re Andersen*, 179 F.3d at 1258 (citing cases); *In re Szostek*, 886 F.2d at 1406 (after plan is confirmed policy favoring finality is stronger than bankruptcy court's obligation to verify plan's compliance with Code).

Those cases that have given preclusive effect to provisions of a confirmed plan that do not comply with the Bankruptcy Code for the most part have not distinguished between provisions that are merely inconsistent with the Code and provisions that actively defy the Code. *See, e.g., In re Pardee*, 193 F.3d at 1084–85; *In re Szostek*, 886 F.2d at 1411 (absence of discretionary provision in plan did not deprive bankruptcy court of authority to confirm it); *but see In re Andersen*, 179 F.3d at 1257, 1260 (confirmation of plan containing undue hardship language, even though contrary to Code, constituted finding of undue hardship). Thus, in *In re Pardee* the Ninth Circuit Bankruptcy Appellate Panel ("BAP") concluded that a creditor's failure to object to a chapter 13 plan or to appeal the confirmation order waived its right to attack the discharge of post-petition interest on a student loan. *In re Pardee*, 218 B.R. 916, 926 (9th Cir. BAP 1998), *aff'd*, 193 F.3d 1083 (9th Cir.1999). The debtors had included a provision in their chapter 13 plan that expressly discharged post-petition interest on a student loan debt, although the plan provided for payment in full of principal and pre-petition interest. The BAP noted that the Bankruptcy Code was silent on the dis-

chargeability of post-petition interest on a nondischargeable student loan, reasoned that post-petition interest was also nondischargeable, but ultimately held that the creditor was bound by the terms of the confirmed plan. *Id.* at 922.

Although the BAP's ruling in *In re Pardee* was affirmed, a subsequent decision of the Ninth Circuit Court of Appeals has held that "[a]lthough confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." *In re Enewally*, 368 F.3d at 1173; *see also Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) (confirmation of chapter 13 plan is res judicata only as to issues that can be raised in less formal procedure for contested matters, not matters that must be resolved in adversary proceeding); *In re Beard*, 112 B.R. 951, 955–56 (Bankr. N.D.Ind.1990) (if an issue must be raised through adversary proceeding it is not part of confirmation process; absent actual litigation confirmation will not have preclusive effect). Understandably, no one has here contended that the issue of the dischargeability of a student loan debt on the basis of undue hardship may be litigated as part of the confirmation process, as "the only questions which are properly before the court in the context of confirmation are those which can be raised as contested matters. Only as to issues of this kind will confirmation operate as res judicata." *Id.*

 Respectfully disagreeing with the holding of *In re Andersen*, this Court concludes that a provision in a confirmation order that one-sidedly purports to resolve an issue that may only be resolved in an adversary proceeding is not entitled to preclusive effect. Moreover, "[w]here the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect." *In re Banks*, 299 F.3d at 302; *accord In re Lemons*, 285 B.R. 327, 331 (Bankr.W.D.Okla.2002); *see also In re Beard*, 112 B.R. at 955 (if adversary proceeding is required, potential defendant has right to expect that proper procedures will be followed).

 Res judicata may not be applied against a party that did not have a full and fair opportunity to litigate the claim in the prior proceeding. In the Supreme Court's oft-quoted words, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The notice afforded ECMC in this case was not reasonably calculated to apprise it of the pendency of an action purporting to discharge an otherwise nondischargeable student loan.

 ECMC received notice under Bankruptcy Rule 2002, rather than service of process under Bankruptcy Rule 7004. It received 25 days notice by mail of the time fixed for filing objections to the plan and of the confirmation hearing. Fed. R. Bankr.P.2002(b). Under Rule 2002 a creditor does not receive any particular notice of any plan provision that may affect it; under Rule 7004, service of summons and complaint puts the creditor precisely on notice of a disputed issue. If an adversary proceeding is required to resolve an issue, the Bankruptcy Rules entitle the potential defendant to a heightened degree of notice. And if "the Bankruptcy Code and

Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." *In re Banks*, 299 F.3d at 303 n. 4. In other words, ECMC had a right under the due process clause "to expect that it would receive a summons and complaint if its rights were in jeopardy." *In re Ruehle*, 307 B.R. at 34 (citing *In re Whelton*, 299 B.R. at 318); *see also Educ. Credit Mgmt. Corp. v. Boyer (In re Boyer)*, 305 B.R. 42, 52 (Bankr.D.Kan.2004) (were it not constrained to follow Tenth Circuit precedent, court would hold that where Code and Rules specify notice that must be given, due process entitles party to receive that kind of notice before order will be given preclusive effect).

That is not to say that failure to follow the rules for service of process is a per se due process violation. Rather, under the circumstances presented here, the student loan creditor did not receive notice reasonably calculated to inform it that the debtor sought discharge of his student loan without initiating an adversary proceeding.

Notice must be "more than a mere formality" to be constitutionally acceptable, *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir.2001); it must be sufficient to have informed ECMC in this case that the Wheltons intended to secure an undue hardship determination that would discharge their debt to ECMC. *See Mullane*, 339 U.S. at 315, 70 S.Ct. 652 (when notice is a person's due, process which is a mere gesture is not due process); *accord Educ. Credit Mgmt. Corp. v. Repp (In re Repp)*, 307 B.R. 144, 149 (9th Cir. BAP 2004); *cf. In re Friedman*, 184 B.R. 883, 889 (Bankr. N.D.N.Y.1994) (plan which addresses matters concerning claim allowance and/or lien disposition must provide notice sufficient to inform secured creditor of intent to reclassify its claim), *aff'd* 184 B.R. 890 (N.D.N.Y.1995).

As the Bankruptcy Appellate Panel of the Ninth Circuit recently stated in a similar case: "the method chosen for notice was calculated to minimize the chance that it would come to the attention of persons in the position to make litigation decisions for the creditor." *In re Repp*, 307 B.R. at 149. Receipt of a copy of the chapter 13 plan and notice to creditors did not put ECMC adequately on notice, where the discharge by declaration language was buried in a section labeled "Other Provisions," where ECMC's claim was not specifically referenced, and where ECMC had a right to rely on the Code's specific requirement that a debtor initiate an adversary proceeding to obtain an undue hardship determination. *Cf. GMAC Mortgage Corp. v. Duke Salisbury (In re Loloee)*, 241 B.R. 655, 660 (9th Cir. BAP 1999) (motion procedure cannot be used to circumvent requirement of adversary proceeding; addressing mail to nobody in particular at corporation does not satisfy requirement of mailing copy to attention of officer or agent authorized to receive service of process).

This Court is constrained to emphasize that debtors' attorneys may face penalties for engaging in improper conduct in bankruptcy proceedings. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Rule 9011 authorizes the imposition of sanctions for signing documents not "well-grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R. Bankr.P. 9011(a); *see also In re Lemons*, 285 B.R. at 333 (sanctions warranted for including discharge by declaration language in plans); *Patton v. U.S. Dep't. of Educ. (In re Patton)*, 261 B.R. 44, 48 (Bankr.E.D.Wash.2001) (inclusion of plan

provision that attempts to circumvent determination by adversary proceeding of dischargeability of student loan may be subject of sanctions); *In re Hensley*, 249 B.R. 318, 321 (Bankr.W.D.Okla.2000) (citation of *Andersen* as authority for intentional insertion of language that violates Bankruptcy Code is offensive and specious). Although prior to the Bankruptcy Court's ruling in this case, an attorney practicing in Vermont may have entertained a good faith belief that Vermont courts would accord preclusive effect to a plan containing an improper or illegal discharge of a student loan, that attorney could not have reasonably believed that the practice of hiding discharge by declaration language in a chapter 13 plan was warranted by the Bankruptcy Code. Even cases that have held that confirmation of a plan including discharge by declaration language constitutes a binding adjudication of hardship have stated that the appropriate means of obtaining an undue hardship determination is via an adversary proceeding, and that a discharge by declaration provision violates the Bankruptcy Code and Rules. *See In re Andersen*, 179 F.3d at 1256; *see also In re Evans*, 242 B.R. 407, 411 (Bankr. S.D.Ohio 1999); *In re Stevens*, 236 B.R. 350, 352 (Bankr.E.D.Va.1999); *In re Pardee*, 218 B.R. at 925 (plan should not have been confirmed with discharge provision).

As the Bankruptcy Court admonished:

[t]he inclusion of such a provision in a plan, where it has no legitimacy, constitutes ... "practice by ambush." Sneaking a provision in a plan, hoping no one will notice it, and then reaping the benefits of its inclusion violates the fundamental principles of due process and of fair play, and threatens the heart of our legal, adversarial system. Enforcement of the discharge here would be tantamount to condoning a surreptitious

strategy that should, in fact, be discouraged with vigor.

*In re Whelton*, 299 B.R. at 318.

Whelton has argued that ECMC's complaint for declaratory relief is an untimely appeal in disguise, barred by Rule 8002 of the Federal Rules of Bankruptcy Procedure. On the contrary, Rule 9024, providing for relief from a judgment or order, permits this action. Fed. R. Bankr.P. 9024. Bankruptcy Rule 9024 incorporates much of Rule 60 of the Federal Rules of Civil Procedure. Rule 60(b) permits a court to relieve a party from a final order on the ground that the judgment is void or for any other reason justifying relief from the operation of the judgment. Fed. R.Civ.P. 60(b)(4), (6); *see Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 758 (2d Cir.1981) (Rule 9024 invests bankruptcy judge with discretion to grant relief from final order under F.R. Civ. P. 60(b)).

 A judgment is void "if a court with jurisdiction has 'acted in a manner inconsistent with due process of law.'" *Beller & Keller v. Tyler*, 120 F.3d 21, 23 (2d Cir.1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 39 (2d Cir.1989)); *accord Otte v. Mfrs. Hanover Commercial Corp. (In re Texlon Corp.)*, 596 F.2d 1092, 1099 (2d Cir.1979) (quoting 11 Wright, Miller & Kane, Federal Practice & Procedure § 2862). As discussed above, Whelton's failure to provide notice of his intent to obtain a hardship determination in a manner substantially equivalent to the service required for adversary proceedings denied ECMC due process. *See In re Banks*, 299 F.3d at 302; *Pearson v. U.S. Dep't. of Educ. (In re Pearson)*, 279 B.R. 612, 617 (Bankr. M.D.Ga.2002); *cf. In re Loloee*, 241 B.R. at 661 (if notice is inadequate, then order is void); *United States v. Nat'l Westminster Bank USA (In re Q–C Circuits Corp.)*,

231 B.R. 506, 512 (E.D.N.Y.1999) (where creditor is not given notice or notice given is inadequate, bankruptcy court may set aside cash collateral order). Accordingly, the Bankruptcy Court did not lack the authority to vacate portions of the confirmation and discharge orders that had the effect of discharging Whelton's consolidated student loan.

■■■■ Whelton has argued further that § 1330(a) of Title 11, United States Code, limiting the circumstances under which an order of confirmation can be revoked, applies to prevent vacating the portion of his confirmation order that purported to discharge his student loan debt, citing *Branchburg Plaza Associates, L.P. v. Fesq (In re Fesq)*, 153 F.3d 113 (3d Cir.1998).[2] Section 1330(a) provides: "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud." 11 U.S.C.A. § 1330(a). ECMC's adversary proceeding was filed considerably more than 180 days after the date of entry of the order of confirmation, and fraud was not the basis for the Bankruptcy Court's decision. Thus, if § 1330 provides the only means by which the provisions of a confirmed order may be altered, the Bankruptcy Court lacked the authority to vacate a portion of the confirmation order, not only because there was no finding of fraud, but because the complaint was not filed within 180 days of the date of the order.

*In re Fesq* involved an attempt by a creditor to vacate a chapter 13 plan whose sole provision arranged for a small lump sum payment in full satisfaction of a secured claim, where a computer error led the creditor to miss the deadline for filing objections to the plan. In a 2–1 decision, the Third Circuit panel concluded that fraud is the only ground for relief available for revocation of a chapter 13 confirmation order. *Id.* at 120. The court used "revoke" and "vacate" interchangeably in its opinion, and in that case there was only one provision, and one creditor, involved.

Although *In re Fesq* is persuasively reasoned, it is inapposite in this case. First, the Bankruptcy Court did not revoke the Wheltons' confirmation order. Although ECMC did seek revocation of the confirmation order in Count I of its Complaint for Declaratory Judgment, the Bankruptcy Court dismissed Count I. *In re Whelton*, 299 B.R. at 319.[3] The Bankruptcy Court invalidated only that portion of the order of confirmation that purported to discharge Whelton's student loan debt without a factual finding of undue hardship. Second, *In re Fesq* did not involve an illegal plan provision, nor did it involve constitutionally deficient notice to the creditor. As a panel of the Second Circuit Court of Appeals recently wrote: "[i]t is, of course, a fundamental axiom of American law, rooted in our history as a people and requiring no citations to authority, that the requirements of the Constitution prevail over a statute in the event of a conflict." *United States v. Coppa (In re United States)*, 267 F.3d 132, 145–46 (2d Cir.2001). A student loan creditor complaining that it received constitutionally

---

2. Whelton has not challenged the Bankruptcy Court's authority to vacate a portion of its discharge order on the basis of § 1328(e), which limits the ability of a court to revoke a discharge.

3. Regardless of the *Fesq* rationale, ECMC was precluded from filing a complaint to revoke an order confirming a plan by Bankruptcy Rule 9024(3). Fed. R. Bankr.P. 9024(3) (complaint to revoke order confirming plan may be filed only within time allowed by § 1144, § 1230, or § 1330).

deficient notice of a debtor's intent to avoid the requirements for obtaining an undue hardship determination is not barred by § 1330 from seeking relief from the effect of the confirmation order. *See In re Hudson,* 260 B.R. 421, 444 (Bankr. W.D.Mich.2001) (notwithstanding *Fesq* majority opinion, Rule 9024 may be utilized to relieve party from effect of chapter 13 confirmation order when notice is constitutionally inadequate).

### Conclusion

This Court joins the courts that have refused to accord preclusive effect to chapter 13 plan provisions that purport to discharge student loan debts without a factual determination of undue hardship. *See In re Banks,* 299 F.3d at 303; *In re Repp,* 307 B.R. at 154; *In re Ruehle,* 307 B.R. at 37. The decision of the Bankruptcy Court is AFFIRMED on the grounds that discharge by declaration language in a plan does not effectively except the debt from nondischargeability, and employment of such a process denies the student loan creditor due process.