# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-2131

IN RE: CRAIG D. HANSON,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 C 55—**John C. Shabaz**, *Judge.*

ARGUED NOVEMBER 12, 2004—DECIDED FEBRUARY 2, 2005

Before BAUER, MANION, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Debtor-appellant Craig Hanson filed for Chapter 13 bankruptcy relief in November 1992, listing only his unsecured student loan debt of approximately $31,500 on his Chapter 13 schedules. After Hanson's Chapter 13 plan was confirmed without objection, Hanson made monthly payments of $135 over 60 months on his student loan, and the bankruptcy court entered an order discharging his debt in September 1997. The discharge order was erroneous because the Bankruptcy Code makes student loan debt nondischargeable absent a showing of undue hardship by the debtor, and Hanson had made no such showing. Despite the error, the order went unchallenged until May 2003, when creditor Educational Credit Management Corporation ("ECMC") filed a motion for relief from the discharge order in the bankruptcy court. The bankruptcy court granted ECMC's motion, and the district court affirmed. We affirm.

## I. Background

Between 1980 and 1987, Hanson borrowed money from Great Lakes Higher Education Corporation ("Great Lakes") to finance his undergraduate and graduate education at the University of Wisconsin-River Falls. Hanson defaulted on the student loan debt in July 1989, and Great Lakes obtained a default money judgment against him in December 1992 in the amount of $31,583.77. In November 1992, Hanson filed a voluntary petition (the "Petition") for Chapter 13 relief. After receiving notice of the Petition, Great Lakes moved to vacate the default judgment against him, with the right to reopen if the bankruptcy was dismissed. The state court granted Great Lakes' motion.

Great Lakes timely filed a proof of claim in the amount of $35,531.08. Hanson's Chapter 13 Plan (the "Plan") proposed to pay $135 monthly to Great Lakes over 60 months, which was 19% of the claim. The Plan was confirmed without objection. At no time did Hanson file an adversary proceeding to determine the dischargeability of his student loan.

Hanson completed payments under the Plan, and the bankruptcy court entered a discharge order on September 11, 1997. The order provided, in relevant part:

1. Pursuant to 11 U.S.C. Section 1328(a), the debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. Section 502, except any debt:

   . . . .

   (c) for a student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8) in any case in which discharge is granted prior to October 1, 1996.

Pursuant to the terms of the order, Hanson's student loan debt was discharged because the discharge was granted

*after* October 1, 1996. Unfortunately, the discharge order reflected an October 1, 1996 sunset provision that already had been repealed by Congress. The result of the error was that Hanson's student loan debt was discharged without any showing of undue hardship, which is required by 11 U.S.C. § 523(a)(8) prior to the discharge of student loan debt.

No objection to the error was raised until May 2003, when ECMC, Great Lakes' successor-in-interest, filed a motion for relief from the order under Rule 60(b)(4) of the Federal Rules of Civil Procedure. The bankruptcy court granted ECMC's motion on the ground that the discharge order was void because it violated ECMC's due process rights.[1] The district court affirmed.

## II. Discussion

### A. Standard of Review

Although we generally review a lower court's Rule 60(b) decisions for abuse of discretion, *Blaney v. West*, 209 F.3d 1027, 1031 (7th Cir. 2000), we review challenges to Rule 60(b)(4) decisions de novo to the extent they turn on errors of law. *Federal Election Comm'n v. Al Salvi for Senate Committee*, 205 F.3d 1015, 1019 (7th Cir. 2000).

---

[1] Although Great Lakes was Hanson's initial student loan creditor, ECMC currently holds the student loan note and, for the sake of simplicity, we will refer to ECMC as the creditor throughout this opinion.

**B. Discharge of Student Loans**

Student loan debts are presumptively nondischargeable in bankruptcy proceedings. 11 U.S.C. § 523(a)(8). Debtors can overcome this presumption by making an affirmative showing that excepting the student loan debt from discharge would impose an undue hardship on the debtor or the debtor's dependents. *Id.* The Bankruptcy Rules require the debtor to file an "adversary proceeding" against the holder of the student loan debt to make such a showing. FED. R. BKRTCY. P. 4007(d), 7001(6); *Tennessee Student Assistance Corp. v. Hood*, 124 S.Ct. 1905, 1913, 158 L. Ed. 2d 764 (2004). An adversary proceeding requires the service of a summons and a complaint. FED. R. BKRTCY. P. 7001(6), 7003, 7004; *Hood*, 124 S.Ct. at 1913.

A number of student loan debtors have circumvented this process by inserting undue hardship findings or student loan or loan interest discharge provisions in their proposed plans. *See, e.g.*, *In re Banks*, 299 F.3d 296 (4th Cir. 2002); *In re Ruehle*, 307 B.R. 28 (B.A.P. 6th Cir. 2004). Apparently, the hope is that an unsuspecting bankruptcy court will confirm the plan and that the lender will not recognize the discharge by declaration ploy in time to object to confirmation or to file an appeal. The result is contrary to the express language of the Bankruptcy Code and Rules: The debtor obtains a discharge of his student loan debt without filing an adversary proceeding to establish undue hardship. Other student debtors have achieved the same result—discharge of student loans absent a showing of undue hardship—due to bankruptcy courts' use of outdated discharge forms that erroneously reflect a previously repealed sunset provision connected to 11 U.S.C. § 523(a)(8). *See, e.g.*, *In re Tyler*, 285 B.R. 635 (Bankr. W.D. Tex. 2002).

Hanson falls into the latter category. His attorney did not include an undue hardship finding or mention the discharge

of Hanson's student loan debt in the proposed plan. Nevertheless, Hanson's failure to file an adversary proceeding in conjunction with his bankruptcy is puzzling. The only debt listed was his presumptively nondischargeable student loan debt and he did not initiate an adversary proceeding in an effort to overcome the presumption. It may be that Hanson's attorney was unaware that student loan debt is nondischargeable in the absence of a showing of undue hardship at an adversary proceeding or, as the district court surmised, that the Plan was proposed in the hope that Congress would repeal § 523(a)(8) and render Hanson's debt dischargeable. Regardless of his intentions, Hanson received a windfall: The bankruptcy court discharged his student loan debt without any showing of undue hardship.

We must decide whether Hanson gets to keep his windfall due to the passage of time without any challenge from ECMC or whether entry of the discharge order violated ECMC's due process rights so that the passage of time is immaterial. FED. R. CIV. P. 60(b) (no time limit on relief from judgment or order if judgment or order is void); *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000) ("A judgment is void for the purposes of Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."). At least three circuits have addressed this issue. The Tenth Circuit started the line of case law in 1999 when it rejected a student loan creditor's collateral challenge to a discharge provision contained in a confirmed Chapter 13 plan. *In re Anderson*, 179 F.3d 1253, 1254 (10th Cir. 1999). Although the debtor had inserted an undue hardship finding in her proposed plan without filing an adversary proceeding, the court faulted the creditor for failing to object to confirmation or timely appeal the discharge by declaration. *Id.* at 1258. The Ninth Circuit followed suit in *In re Pardee*, 193 F.3d 1083 (9th Cir. 1999). Then, the Fourth Circuit created

a circuit split by holding that due process entitles a student loan creditor to the heightened notice provided for by the Bankruptcy Code and Rules. *Banks*, 299 F.3d at 302-03. *See also Ruehle*, 307 B.R. 28, 37 (B.A.P. 6th Cir. 2004) (following *Banks* and criticizing attorneys for inserting student loan discharge by declaration provisions in the wake of *Anderson* and *Pardee*).

In a recent student loan discharge by declaration case, the Tenth Circuit retreated from its holding in *Anderson* and opined that *Anderson* was wrongly decided and should be reconsidered. *Poland v. Educ. Credit Mgmt. Corp.*, 382 F.3d 1185 (10th Cir. 2004). The debtor in *Poland* proposed a plan that purported to discharge her student loan debt if no timely proof of claim was filed. *Id.* at 1187. The plan was confirmed, the creditor filed its proof of claim one day late, the untimely claim was disallowed, and the student loan debt was discharged without a showing of undue hardship. *Id.* The Tenth Circuit reversed, distinguishing *Anderson* because the plan under consideration did not contain a finding of undue hardship. *Id.* at 1188. Though the court did not overrule *Anderson*, it recognized the decision's problematic consequences and questionable rationale:

> The panel is of the view that *Anderson* was wrongly decided and should be reconsidered. The unfortunate result of *Anderson* is that astute attorneys now insert student loan discharge language (after today, complete with a finding of undue hardship) hoping to achieve preclusive effect, notwithstanding: (1) Bankruptcy Code § 523(a)(8) explicitly precludes the discharge of a debtor's student loan absent a showing of undue hardship, (2) Bankruptcy Rules specifically require a successful adversary proceeding, complete with individualized service of process, to establish undue hardship and discharge a student loan, and (3) lack of the required notice under the Bankruptcy Rules proscribes preclusive effect.

*Id*. at 1189 n.2.

We embrace the analysis and holding of the Fourth Circuit in *Banks* and the Tenth Circuit in *Poland*, and we respectfully disagree with the Ninth Circuit's decision in *Pardee*. The decisions in *Banks* and *Poland* have greater persuasive force because they are consistent with Congress' unmistakable intent to make student loan debt nondischargeable absent a showing of undue hardship. Moreover, cases like *Anderson* and *Pardee* permit debtors to flout both substantive and procedural provisions of the Bankruptcy Code and Rules through a meaning-less incantation of undue hardship in their proposed plans. Although we recognize the strong policy favoring finality of confirmation orders, due process entitles creditors to the heightened notice provided for by the Bankruptcy Code and Rules, and the dictates of due process trump policy arguments about finality. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L. Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The instant case is arguably distinguishable from the cases discussed above because Hanson benefitted from the bankruptcy court's error rather than a discharge by declaration provision. However, the focus of our inquiry is on the process afforded to ECMC, and ECMC received as little process in this case as the creditors in *Banks* and *Poland*. Hanson's failure to serve ECMC with a summons and an adversary proceeding complaint effectively denied ECMC the opportunity of presenting an objection prior to the adjudication of its rights. *See Mullane*, 339 U.S. at 313-14 ("[The] opportunity to be heard . . . must precede the deprivation of property at issue.").

Hanson criticizes ECMC for sitting on its rights and failing to timely challenge the discharge order. However, student loan creditors justifiably rely on the explicit notice provisions of the Bankruptcy Code and Rules and have no reason to act until the service of a summons for an adversary proceeding apprises them that their property rights may be affected. As noted by the Supreme Court in *Mullane*, due process requires "notice and the opportunity for hearing appropriate to the nature of the case" prior to deprivation of property rights, and the creditor in this case was denied the pre-deprivation notice and hearing that are required in bankruptcies involving student loans. *Mullane*, 339 U.S. at 313.

The recent Supreme Court decision in *Hood* does not compel a different result. *Hood*, 124 S.Ct. 1905. The Court granted certiorari in *Hood* to determine whether the Bankruptcy Clause of the Constitution, which gives Congress the power to establish national bankruptcy laws, empowers Congress to abrogate Eleventh Amendment state sovereign immunity from private suits in the context of bankruptcy discharge matters. *Id*. at 1908. The jurisdictional issue arose in *Hood* after the petitioner, a state entity that guarantees student loans, filed a motion to dismiss an adversary proceeding on the basis of Eleventh Amendment sovereign immunity. *Id*. at 1909. The Court held that an undue hardship determination was not a suit against the State for purposes of the Eleventh Amendment because the proceeding was an *in rem* proceeding with jurisdiction predicated on the res of the bankruptcy estate. *Id*. at 1912-13. Consequently, the Court did not reach the constitutional question upon which certiorari was granted. *Id*. In explaining its conclusion, the Court acknowledged that service of process ordinarily is an indignity to the sovereignty of the state, but declined to give that requirement dispositive weight, noting that the service of a summons was indistin-

guishable in practical effect from proceeding by motion. *Id*. at 1914. The Court also noted that § 523(a)(8) does not require a summons and that a debtor could proceed by motion in the absence of Bankruptcy Rule 7001(6). *Id*. Notably, *Hood* did not involve a due process challenge or noncompliance with the Bankruptcy Code or Rules. More-over, the characterization of a proceeding as an *in rem* proceeding does not extinguish a creditor's due process rights. *See Mullane*, 339 U.S. at 312; *Ehorn v. Sunken Vessel*, 294 F.3d 856, 859 (7th Cir. 2002). In addition, the *Hood* Court's suggestion, in an entirely different context, that a debtor could proceed by motion in the absence of the Bankruptcy Rules does not authorize debtors to ignore the requirements of the Rules. Consequently, *Hood* is not on point, and Hanson's reliance on it is misplaced.

We wish to emphasize that our holding is a narrow one. We do not hold that the due process clause requires the service of a summons and adversary proceeding prior to the discharge of student loan debt. Rather, "we merely confirm that where the Bankruptcy Code and Bankruptcy Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." *Banks*, 299 F.3d at 302. Due to the lack of compliance with the Bankruptcy Code and Rules, the bankruptcy discharge order was void and ECMC was properly granted relief pursuant to Rule 60(b)(4). *In re Escobedo*, 28 F.3d 34, 35 (7th Cir. 1994) (failure to comply with Bankruptcy Code renders plan nugatory).

## III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the bankruptcy court.


A true Copy:

       Teste:

            _____
             *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*