871 A.2d 671

NEW JERSEY HIGHER EDUCATION ASSISTANCE AUTHORITY,
PLAINTIFF–RESPONDENT, v. PATRICK PENNELL,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 19, 2005—Decided April 8, 2005.

Before Judges KESTIN, ALLEY and FUENTES.

*Schachter Portnoy,* attorneys for plaintiff-respondent (*Howard Schachter* and *Susan Steinman,* of counsel and on the brief).

*Daniel Straffi,* attorney for defendant-appellant.

The opinion of the court was delivered by

ALLEY, J.A.D.

■   The principal question presented in this appeal, and one that appears to be of first impression in this State, is whether a bankruptcy court order confirming a Chapter 13 bankruptcy plan that purports to discharge a student loan pursuant to a so-called "discharge by declaration" [1] is valid in the absence of a factual determination by the court and appropriate notice to the creditor that "[e]xcepting such debt from discharge will impose an undue hardship on the debtor and the debtor's dependents," 11 *U.S.C.A.* § 523(a)(8).

The trial court denied defendant's motion seeking an Order Directing Cancellation and Discharge of Judgment, *N.J.S.A.* 2A:16–49.1. If granted, the order would have given effect to a

---

[1] *See, In re Banks* 299 *F.*3d 296, 301 (4th Cir.2002).

discharge of defendant's obligation to repay student loans that had been provided for in his Chapter 13 Bankruptcy Plan as confirmed by the United States Bankruptcy Court. We affirm.

The facts essentially are these. Plaintiff, the New Jersey Higher Education Assistance Authority (NJHEAA), obtained a judgment against defendant, Patrick Pennell, on October 25, 1996, in the amount of $15,764.74, plus $40 in costs, for defaulting on his student loan obligations. Almost two years later, on June 22, 1998, defendant filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the District of New Jersey. NJHEAA was served a Notice of Commencement of Case Under Chapter 13 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates on June 24, 1998. The Notice listed NJHEAA on "Schedule F—Creditors Holding Unsecured Nonpriority Claims," with the amount of the claim listed as $26,551. It further stated that any "objection to confirmation of the plan shall be filed and served [ten] days before confirmation," with the deadline to file a proof of claim set at October 15, 1998.

Defendant also filed a Chapter 13 Plan of Repayment in which he certified his plan to pay to a trustee $160 per month for 60 months, and stated that Class Three claims, of which NJHEAA's claim was a part, would be paid a pro rata share of what remained after the trustee satisfied defendant's Class One and Class Two claims. Defendant further stated that

[a]fter payment of the pro rata share of these claims, the balance of such claims shall be discharged. Pursuant to 11 *U.S.C.* § 523(a)(8), excepting the aforementioned educational loans from discharge will impose an undue hardship on the Debtor. Confirmation of Debtor's Plan shall constitute a finding to that effect and that said debt is dischargeable.

The Summary Plan, issued by the bankruptcy court on July 14, 1998, was based on the "Plan of Debtor" submitted to that court on June 23, 1998, and stated that

[t]he judgments held by NJHEAA ... shall be discharged of record upon completion of the Plan. The government guaranteed loans held by the NJHEAA ... shall be paid a pro rata share under the Plan and after payment of such amounts the balance of the loans and claims shall be discharged.

NJHEAA filed a Proof of Claim in the bankruptcy proceeding on July 31, 1998, in the amount of $14,880.10. On December 8, 1998, the bankruptcy court entered an Order Confirming the Chapter 13 Plan. Through defendant's payments pursuant to the Plan, he was credited with $4,559.26 of the $14,880.10 owed, leaving a balance of $10,320.84 due NJHEAA. On April 8, 2003, the bankruptcy court issued an order granting defendant a discharge. Provisions on the back of the order explained that "[m]ost, but not all types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to section 502 of the Bankruptcy Code." The summary states that "[d]ebts for most student loans" are among the categories of debt commonly "*not* discharged in a chapter 13 bankruptcy case[.]"

The present case arose when defendant thereafter, over the opposition of NJHEAA, sought an Order Directing Cancellation and Discharge of Judgment, pursuant to *N.J.S.A.* 2A:16–49.1, which provides that

[a]t any time after [one] year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, or to the court of which it has become a judgment by docketing it, or filing a transcript thereof, for an order directing the judgment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment or the debt upon which such judgment was recovered, an order shall cancel and discharge the same by entering on the record or in the margin of the record of judgment, that the same is canceled and discharged by order of the court, giving the date of entry of the order of discharge.

Judge Thomas E. O'Brien denied defendant's motion in an order filed May 14, 2004. He specifically concluded that "a student loan is not dischargeable in bankruptcy," that these debts survived the discharge issued by the bankruptcy court, and that the court could not honor defendant's request for cancellation. Defendant appeals this determination.

In considering the bankruptcy court's order discharging defendant's debt, we note the following provisions of 11 *U.S.C.A.* § 523(a)(8), referred to by the trial judge and expressly cited in the relevant portion of defendant's Summary Plan:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) For an education loan, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

. . . .

(B) Excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The Senate Report on the Bankruptcy Act of 1978 states that 11 *U.S.C.A.* § 523(a)(8) "is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan." *S. Rep.* No. 95–989 at 79, 95th Cong., 2nd Sess. 1978, 1978 U.S.Code Cong. & Admin.News 5787, at 5865 (1978).[2] But as the Third Circuit has observed,

the policy of finality, as evidenced by § 1327, which provides that, absent fraud, confirmation of a debtor's plan binds both the debtor and the creditors. Under § 1327, a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.

---

[2] An annotation by Andrew M. Campbell, *Bankruptcy Discharge of Student Loan on Ground of Undue Hardship Under § 523(a)(8)(B) of Bankruptcy Code of 1978 (11 U.S.C.S. § 523(a)(8)(B) Discharge of Student Loans,* 144 *A.L.R. Fed.* 1, 29 (1998)) (footnotes omitted), sets forth Congress' purpose in enacting this provision:

In 1976 Congress enacted § 439A of the Higher Education Act of 1965 (codified as 20 *U.S.C.A.* §§ 1087–3) which provided that student loans were not dischargeable in bankruptcy unless the debt first became due more than 5 years before the date of the filing of the bankruptcy petition or failure to discharge the debt would cause undue hardship to the debtor or to dependents of the debtor. The legislation was a response to a rapid increase in the number of bankruptcies filed by recent graduates of college or professional schools who were not in financial distress generally and who filed for bankruptcy in order to discharge their student loans shortly after graduating. In 1968–70 there were 760 bankruptcies involving student loans, in 1976 there were 8,641 representing $33.1 million in unpaid loans and it was reported that the Department of Health, Education and Welfare had paid over $500 million to banks for nearly 350,000 student defaults. When Congress adopted the Bankruptcy Code in 1978, § 523(a)(8) carried over the restrictions on the discharge of student loans with § 523(a)(8)(B) providing for the discharge of student loans if failure to discharge the loans would cause undue hardship to the debtor and the debtor's dependents.

[*In re Szostek*, 886 *F.*2d 1405, 1408 (3d Cir.1989) (emphasis omitted).]

■ The question then is whether the policy of finality applies to the discharge of student loans in the present circumstances. Typically "in order to obtain a determination of dischargeability of a student loan debt, the Bankruptcy Rules require a defendant to commence an adversary proceeding by filing a complaint and service of a summons and the complaint" as set forth in the *Federal Rules of Bankruptcy Procedure* §§ 4007(a) & (e), 7001(6), 7003 and 7004. *In re Whelton*, 312 *B.R.* 508, 514 (D.Vt.2004). It is then up to the bankruptcy court to determine, based on the evidence presented, whether the defendant actually suffers an undue hardship. *Ibid.* The debtor has the burden of establishing undue hardship. *In re Andersen*, 179 *F.*3d 1253, 1256 (10th Cir.1999).[3]

■ The Seventh Circuit has summarized the governing principles in *In re Hanson*, 397 *F.*3d 482, 484 (7th Cir.2005):

Student loan debts are presumptively nondischargeable in bankruptcy proceedings. 11 *U.S.C.* § 523(a)(8). Debtors can overcome this presumption by making an affirmative showing that excepting the student loan debt from discharge would impose an undue hardship on the debtor or the debtor's dependents. *Id.* The Bankruptcy Rules require the debtor to file an "adversary proceeding" against the holder of the student loan debt to make such a showing. FED. R. BKRTCY. P. 4007(d), 7001(6); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 124 S.Ct. 1905, 1913, 158 L.Ed.2d 764 (2004). An adversary proceeding requires the service of a summons and a complaint. FED. R. BKRTCY. P. 7001(6), 7003, 7004; *Hood*, 124 *S.Ct.* at 1913.

The Fourth Circuit pointed out in *Banks, supra,* 299 *F.*3d at 301, that the "number of Debtors seeking to improperly discharge nondischargeable debt increased significantly following the deci-

---

[3] The Third Circuit considers the following factors in determining undue hardship:

(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living if forced to repay the loans; (2) that this situation is likely to persist for a significant portion of the repayment period; and (3) that the debtor has made good faith efforts to repay the loans. [*In re Faish*, 72 *F.*3d 298, 305 (3d Cir.1995), *cert. denied*, 518 *U.S.* 1009, 116 *S.Ct.* 2532, 135 *L.Ed.*2d 1055, *reh'g denied*, 518 *U.S.* 1047, 117 *S.Ct.* 24, 135 *L.Ed.*2d 1118 (1996).]

sions of our sister Circuits in *In re Andersen* [179 *F.*3d 1253 (10th Cir.1999)] and *In re Pardee* [193 *F.*3d 1083 (9th Cir.1999)]." *Hanson*, at 484–85, described as follows the phenomenon that has given rise to litigation of this type:

> A number of student loan debtors have circumvented this process by inserting undue hardship findings or student loan or loan interest discharge provisions in their proposed plans. *See, e.g., In re Banks*, 299 *F.*3d 296 (4th Cir.2002); *In re Ruehle*, 307 *B.R.* 28 (B.A.P. 6th Cir.2004). Apparently, the hope is that an unsuspecting bankruptcy court will confirm the plan and that the lender will not recognize the discharge by declaration ploy in time to object to confirmation or to file an appeal. The result is contrary to the express language of the Bankruptcy Code and Rules: The debtor obtains a discharge of his student loan debt without filing an adversary proceeding to establish undue hardship. Other student debtors have achieved the same result—discharge of student loans absent a showing of undue hardship—due to bankruptcy courts' use of outdated discharge forms that erroneously reflect a previously repealed sunset provision connected to 11 *U.S.C.* § 523(a)(8). *See, e.g., In re Tyler*, 285 *B.R.* 635 (Bankr.W.D.Tex.2002).

Several federal appellate cases have addressed the issue that is before us, and the balance of persuasive authority favors the result reached here by the trial judge. Thus, a debtor's attempts to achieve a Chapter 13 discharge by declaration have been disapproved in *Hanson, supra; Poland v. Educ. Credit Mgmt. Corp.*, 382 *F.*3d 1185 (10th Cir.2004); and *In re Banks, supra. See also, In re Ruehle*, 307 *B.R.* 28 (B.A.P. 6th Cir.2004).[4]

---

[4] The Third Circuit does not appear to have decided the issue before us, although defendant relies on that court's holding in *In re Szostek, supra,* 886 *F.*2d at 1408, where the issue was "whether, in the absence of fraud, the failure of a creditor to attend the confirmation hearing, object timely to the plan, or appeal the order of confirmation, regardless of the reason, preclude[d] the creditor from obtaining full recovery of the present value of its claim when such was not provided for in the confirmed plan." Absent fraud, and absent the creditor's timely objection to the plan, the court was unwilling to vacate the plan even though the lower court failed to provide for present value. *Id.* at 1414. The court concluded that "after [a] plan is confirmed[,] the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code." *Id.* at 1406.

The Third Circuit also referred to the United Supreme Court's decision in *Stoll v. Gottlieb*, 305 *U.S.* 165, 59 *S.Ct.* 134, 83 *L. Ed.* 104, *reh'g denied,* 305 *U.S.* 675, 59 *S.Ct.* 250, 83 *L.Ed.* 437 (1938), observing:

> At issue in *Stoll* was a corporate debtor's plan which included cancellation of a guaranty to pay a bond. Prior to confirmation, there had been no

Despite a split in federal appellate cases, defendant relies on the Ninth Circuit's holding in *In re Pardee*, 193 *F*.3d 1083 (9th Cir.1999), which followed *In re Andersen*, 179 *F*.3d 1253 (10th Cir.1999), both of which have been criticized by *Hanson* and other cases. In *Pardee*, a Chapter 13 Plan stated that all post-petition interest on a student loan held by creditor would be discharged. There were no objections to the plan and the plan was confirmed. *Ibid.* Thereafter, a creditor attempted to recover the debt. The Court held that the creditor's failure to object to the plan functioned as a waiver of his rights to attack the plan later, particularly in claiming that the plan was contrary to the Bankruptcy Code. *Id.* at 1085. The Bankruptcy Court for the District Court of Delaware came to a similar conclusion on similar facts in *In re York*, 250 *B.R.* 842 (Bankr.D.Del.2000).

While defendant further relies on the decision by a Tenth Circuit panel in *In re Andersen, supra*, 179 *F*.3d 1253, after his brief was filed that result was questioned by another panel of that court in *Poland, supra*, at 1187–89, where the Tenth Circuit panel expressed its view that *Andersen* "was wrongly decided and should be reconsidered," and also referred to "the unfortunate result of *Andersen*." In *Andersen*, the debtor included in his Chapter 13 plan a provision stating the following:

All timely filed and allowed unsecured claims, including the claims of Higher Education Assistance Foundation and UNIPAC–NEBHELP, which are government guaranteed educations loans, shall be paid ten percent (10%) of each claim, and the balance of each claim shall be discharged. Pursuant to 11 *U.S.C.* § 523(a)(8), excepting the aforementioned education loans from discharge will impose an undue hardship on the debtor and the debtor's dependents. Confirmation of debtor's plan shall constitute a finding to that effect and that said debt is dischargeable.

---

objections to the plan. After confirmation, however, the creditor filed an action in state court to recover on the guaranty. The Supreme Court held that the finality of the bankruptcy confirmation order barred the creditor from litigating its claim.

[*In re Szostek, supra*, 886 *F*.2d at 1409.]

Neither the Supreme Court's decision nor *In re Szostek* dealt with a statutory provision that rendered the particular debt at issue nondischargeable, and thus, the present case poses a somewhat different question.

[*Id.* at 1254.]

The creditor untimely objected to the plan, which was confirmed without consideration of the objection. *Ibid.* The debtor completed the plan as scheduled and his debts subsequently were discharged. *Ibid.*

The court concluded that "[a] creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests." *Id.* at 1257. It also noted the policy set forth in *In re Szostek, supra,* that finality of a confirmed plan trumps the court's and trustee's obligation to ensure that the plan complied with the Bankruptcy Code. *Id.* at 1258. As a result of the creditor's purported failure to protect its interests, the court concluded that the confirmed plan was res judicata to all issues that the creditor could have raised in challenging the plan's provisions. *Ibid.*

Notwithstanding the views of the learned courts in *Andersen* and *Pardee,* we find that the contrary results reached in such cases as *Hanson; Poland,* and *Banks* represent the persuasive and greater weight of federal authority. The same correct result has been reached not only by the above-mentioned appellate courts but also, for example, by the United States District Court for the District of Vermont in *In re Whelton, supra,* 312 *B.R.* 508. There, the debtor's bankruptcy plan purported to discharge the debtor's student loans after completion of the scheduled payments, stating that "the confirmation of this Plan will constitute a finding that excepting the debtor's educational loans from discharge will impose an undue hardship upon the debtors." *Id.* at 512. The plan did not possess the name of any particular creditor; the creditor involved in that case received a copy of the plan and the bankruptcy court subsequently confirmed the plan. *Id.* at 512–13.

Upon completion of the bankruptcy plan, the debtor received a discharge which specifically stated that "pursuant to 11 *U.S.C.* § 1328(a) the debtors are discharged from all debts provided for by the plan or disallowed under 11 *U.S.C.* § 502, except any debt for a student loan or education benefit overpayment as specified in

11 *U.S.C.* § 523(a)(8)." *Ibid.* After the discharge, the creditor attempted to collect debtor's debt on the educational loan. Upon being directed to the discharge language, the creditor filed an adversary proceeding in the bankruptcy court seeking to have the discharge of the student loans declared ineffective. The bankruptcy court granted this relief. The District Court of Vermont affirmed, using the same undue hardship test used by the Third Circuit. *Compare id.* at 514, *with In re Faish, supra,* 72 *F.*3d at 305 (illustrating that there is no difference between the test used in the District of Vermont and the Third Circuit).

In deciding whether the discharge declaration included in the plan constituted a finding of "undue hardship," the District Court examined the proper contents of a Chapter 13 plan, noting the following:

> The permissible contents of a chapter 13 plan are set forth in § 1322 of Title 11, United States Code. Subsection (a) prescribes the mandatory components of a chapter 13 plan, and subsection (b) lists additional provisions that a plan may contain. No specific provision in § 1322 allows a debtor to circumvent the adversary proceeding required for an undue hardship determination.
> [*Ibid.*]

It further observed that 11 *U.S.C.* § 1322(b)(10) allows for any provision not inconsistent with the Code to be included in a Chapter 13 plan. *Id.* at 514.

The court in *Whelton* pointed out that the student loan discharge provision included in the plan by debtor, often described as a "discharge by declaration," *id.* at 512, was inconsistent with the Code since a court is authorized only to "grant the debtor a discharge of all debts provided for by the plan . . . except any debt . . . of the kind specified in paragraph . . . (8) of section § 523(a) of this title." *Id.* at 515 (quoting 11 *U.S.C.A.* § 1328(a)(2)). It further recognized, however, that the provision is at tension with 11 *U.S.C.A.* § 1327(a), which provides, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has accepted, or has rejected the plan." *Ibid.* As a result, the court noted that upon confirmation, a bankruptcy

plan binds the parties involved "as to all issues that were or could have been resolved during the confirmation process. Thus a creditor who fails to object to a plan or appeal a confirmation order ordinarily may not subsequently challenge a provision in a confirmed plan, even if it is inconsistent with the Code." *Ibid.*

The court then examined cases such as *In re Pardee; In re Andersen,* and *In re Szostek, supra,* and discerned that "[t]he strong policy favoring finality in reorganization cases has led courts to give preclusive effect to a confirmation order, even if the confirmed bankruptcy plan contains illegal provisions." *Ibid.* It further reasoned, however, that "[t]hose cases that have given preclusive effect to provisions of a confirmed plan that do not comply with the Bankruptcy Code for the most part have not distinguished between provisions that are merely inconsistent with the Code and provisions that actively defy the Code" as was the case in *In re Pardee* and *In re Szostek. Ibid.*

The Vermont District Court noted that, notwithstanding its holding in *In re Pardee,* the Ninth Circuit has since stated in *In re Enewally,* 368 *F.*3d 1165, 1173 (9th Cir.), *cert. denied,* —— *U.S.* ——, 125 *S.Ct.* 669, 160 *L.Ed.*2d 497 (2004), that "[a]lthough confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." *Id.* at 516. The Court also expressly disagreed with the Tenth Circuit's holding in *In re Andersen,* concluding that

a provision in a confirmation order that one-sidedly purports to resolve an issue that may only be resolved in an adversary proceeding is not entitled to preclusive effect. Moreover, "[w]here the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect." *In re Banks,* 299 *F.*3d at 302; *accord In re Lemons,* 285 *B.R.* 327, 331 (Bankr.W.D.Okla.2002); *see also In re Beard,* 112 *B.R.* at 955 (if adversary proceeding is required, potential defendant has right to expect that proper procedures will be followed).

Res judicata may not be applied against a party that did not have a full and fair opportunity to litigate the claim in a prior proceeding. In the Supreme Court's oft-quoted words, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 *U.S.* 306, 314, 70 *S.Ct.* 652, 94 *L.Ed.* 865 (1950). [*In re Whelton, supra,* 312 *B.R.* at 516.]

The creditor in *In re Whelton* received notice of the plan pursuant to the *Federal Rules of Bankruptcy Procedure* § 2002, rather than the service of process required under the *Federal Rules of Bankruptcy Procedure* § 7004 to initiate an adversary proceeding pursuant to the *Federal Rules of Bankruptcy Procedure* § 7001(6). *In re Whelton, supra,* 312 *B.R.* at 516. The difference is that

[u]nder Rule 2002 a creditor does not receive any particular notice of any plan provision that may affect it; under Rule 7004, service of summons and complaint puts the creditor precisely on notice of a disputed issue. If an adversary proceeding is required to resolve an issue, the Bankruptcy Rules entitle the potential defendant to a heightened degree of notice. And if "the Bankruptcy Code and Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." *In re Banks,* 299 *F.*3d at 303 n. 4. In other words, [the creditor] had a right under the due process clause "to expect that it would receive a summons and complaint if its rights were in jeopardy." *In re Ruehle,* 307 *B.R.* at 34 (citing *In re Whelton,* 299 *B.R.* [306] at 318); *see also Educ. Credit Mgmt. Corp. v. Boyer (In re Boyer),* 305 *B.R.* 42, 52 (Bankr.D.Kan.2004) (were it not constrained to follow Tenth Circuit precedent, court would hold that where Code and Rule specify notice that must be given, due process entitled party to receive that kind of notice before order will be given preclusive effect.)

That is not to say that failure to follow the rules for service of process is a per se due process violation. Rather, under the circumstances presented here, the student loan creditor did not receive notice reasonably calculated to inform it that the debtor sought discharge of his student loan without initiating an adversary proceeding.

[*In re Whelton, supra,* 312 *B.R.* at 516–17.]

The district court, in quoting the bankruptcy court it affirmed, stated:

[t]he inclusion of such a provision in a plan, where it has no legitimacy, constitutes ... "practice by ambush." Sneaking a provision in a plan, hoping no one will notice it, and then reaping the benefits of its inclusion violates the fundamental principles of due process and of fair play, and threatens the hearts of our legal, adversarial system. Enforcement of the discharge here would be tantamount to condoning a surreptitious strategy that should, in fact, be discouraged with vigor. [*In re Whelton, supra,* 312 *B.R.* at 518.]

Though factually it is not entirely on all fours with this case, we find the reasoning in *Whelton* to be persuasive. Significantly, as

well, it accords with the weight of federal authority, and we are satisfied that it correctly sets forth the meaning of federal law, by which we are of course bound under the Supremacy Clause of the United States Constitution. *U.S. Const.,* art. VI, cl. 2. As a result, we conclude that the trial court's denial of the cancellation of the debt in this matter should be affirmed. We also note that since 11 *U.S.C.A.* § 523(a)(8) is supposed to be self-executing, and since creditors are not obligated to file complaints to determine the nondischargeability of student loans, as stated in the Senate Report, then no reason exists as to why a creditor should think it is obligated to object to a bankruptcy plan that purports to discharge a student loan. That a creditor will object is less likely when an undue hardship determination is typically made only after an adversary proceeding.

We agree, then, that a creditor deserves appropriate notice if its rights are going to be affected, particularly when it need not anticipate that a purported discharge of a student loan in a bankruptcy plan will actually result in discharge, and when legislation states that student loans are not dischargeable. A bankruptcy plan should not operate as res judicata against a creditor when, as was the case here, the creditor had no reason to anticipate that it should participate by objecting to the plan. Moreover, the strong public policy against the discharge of student loans, unless supported by alternative proof of undue hardship means that the mere assertion of hardship in a "discharge by declaration," without proof of that hardship should render the purported discharge of such debts ineffective.

Defendant argues that an adversary proceeding was not required. We cannot reasonably conclude, however, that the placement of no more than merely conclusory language in a bankruptcy plan is a satisfactory replacement. NJHEAA had no reason to anticipate that a finding of undue hardship could result other than through an adversary proceeding. The brief, conclusory assertion of hardship which defendant used in the bankruptcy plan falls short of establishing the elements typically required to establish

undue hardship. Furthermore, no surprise should result to defendant from this result inasmuch as the discharge order provided that most student loans are not discharged.

Although we have noted the importance of the procedural requirements of the Bankruptcy Code and the Bankruptcy Rules, as did the Court in *Hanson, supra,* 397 *F.*3d at 487, as a matter of due process, we also

emphasize that our holding is a narrow one. We do not hold that the due process clause requires the service of a summons and adversary proceeding prior to the discharge of student loan debt. Rather, "we merely confirm that where the Bankruptcy Code and Bankruptcy Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect." *Banks,* 299 *F.*3d at 302. Due to the lack of compliance with the Bankruptcy Code and Rules, the bankruptcy discharge order was void and ECMC was properly granted relief pursuant to Rule 60(b)(4). *In re Escobedo,* 28 *F.*3d 34, 35 (7th Cir.1994) (failure to comply with Bankruptcy Code renders plan nugatory).

We also emphasize that the present case deals with a type of debt expressly prohibited from discharge, a factor that was not facing the Third Circuit in *In re Szostek,* and we consequently do not feel constrained to apply the Third Circuit's reasoning to plans purporting to discharge student loans.[5]

As much as a debtor depends on the finality of a confirmed plan, a creditor depends on standards in procedure when its rights are

---

[5] As *Hanson* further stated, 397 *F.*3d at 487:

The recent Supreme Court decision in *Hood* [*Tennessee Student Assistance Corp. v. Hood,* 541 *U.S.* 440, 124 *S.Ct.* 1905, 1913, 158 *L.Ed.*2d 764 (2004)] does not compel a different result. *Hood,* 541 *U.S.* 440, 124 *S.Ct.* 1905, 158 *L.Ed.*2d 764. The Court granted certiorari in *Hood* to determine whether the Bankruptcy Clause of the Constitution, which gives Congress the power to establish national bankruptcy laws, empowers Congress to abrogate Eleventh Amendment state sovereign immunity from private suits in the context of bankruptcy discharge matters. *Id.* at 1908. The jurisdictional issue arose in *Hood* after the petitioner, a state entity that guarantees student loans, filed a motion to dismiss an adversary proceeding on the basis of Eleventh Amendment sovereign immunity. *Id.* at 1909. The Court held that an undue hardship determination was not a suit against the State for purposes of the Eleventh Amendment because the proceeding was an *in rem* proceeding with jurisdiction predicated on the res of the bankruptcy estate.

going to be affected. Even with the debtor's use of the "discharge by declaration" language the creditor here had no reason to believe that it was obliged to affirmatively object to protect its interest.

The order appealed from is affirmed.

*Id.* at 1912–13. Consequently, the Court did not reach the constitutional question upon which certiorari was granted. *Id.* In explaining its conclusion, the Court acknowledged that service of process ordinarily is an indignity to the sovereignty of the state, but declined to give that requirement dispositive weight, noting that the service of a summons was indistinguishable in practical effect from proceeding by motion. *Id.* at 1914. The Court also noted that § 523(a)(8) does not require a summons and that a debtor could proceed by motion in the absence of Bankruptcy Rule 7001(6). *Id.* Notably, *Hood* did not involve a due process challenge or noncompliance with the Bankruptcy Code or Rules. Moreover, the characterization of a proceeding as an *in rem* proceeding does not extinguish a creditor's due process rights. *See Mullane*, 339 *U.S.* at 312, 70 *S.Ct.* 652; *Ehorn v. Sunken Vessel*, 294 *F.3d* 856, 859 (7th Cir.2002). In addition, the *Hood* Court's suggestion, in an entirely different context, that a debtor could proceed by motion in the absence of the Bankruptcy Rules does not authorize debtors to ignore the requirements of the Rules. Consequently, *Hood* is not on point, and Hanson's reliance on it is misplaced.