Christopher J. WHELTON,
Defendant–Appellant,

v.

EDUCATIONAL CREDIT MANAGE-
MENT CORPORATION, Plain-
tiff–Appellee.

Docket No. 04–4844–CV.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 3, 2005.

Decided: Dec. 15, 2005.

Bernard M. Lewis, Esq., Randolph, VT, for Defendant–Appellant.

Julie K. Swedback, Esq., St. Paul, MN, for Plaintiff–Appellee.

Before: CALABRESI, RAGGI, Circuit Judges, and MURTHA, District Judge.*

MURTHA, District Judge.

## I. BACKGROUND

In two very thorough and well-reasoned opinions, the Bankruptcy Court and the District Court outlined the undisputed facts underlying this case. *See generally Educ. Credit Mgmt. Corp. v. Whelton (In re Whelton)*, 312 B.R. 508 (D.Vt.2004); *Educ. Credit Mgmt. Corp. v. Whelton (In re Whelton)*, 299 B.R. 306 (Bankr.D.Vt. 2003). The salient facts are as follows.

In 1990, defendant-appellant Christopher J. Whelton obtained his juris doctor degree from Thomas Jefferson School of Law in San Diego, California. Shortly after graduating, he consolidated his student loans through Sallie Mae. In exchange for a promissory note, Sallie Mae disbursed a total of $52,229.89 to the holders of his eight student loans. The California Student Aid Commission ("CSAC"), predecessor in interest to plaintiff-appellee Educational Credit Management Corporation ("ECMC"), guaranteed the consolidated loan.

On or about May 19, 1999, Whelton and his wife filed for relief pursuant to chapter 13 of the Bankruptcy Code. On their Schedule F, they listed CSAC as the holder of an unsecured, non-priority claim for an educational loan in the amount of $103,830.83. This loan constituted the majority of the couple's unsecured debt.

In relevant part, the Wheltons' chapter 13 plan dated May 17, 1999 (hereinafter, with the First Amendment, referred to as "the Plan") provided for "payment of 3% to all allowed unsecured claims" over a period of 36 months. The Plan also included a statement that "the confirmation of

---

* The Honorable J. Garvan Murtha, United States District Judge for the District of Ver- mont, sitting by designation.

this Plan will constitute a finding that excepting the debtor's [sic] educational loans from discharge will impose an undue hardship upon the debtors." Such language is commonly referred to as "discharge by declaration." *In re Whelton,* 312 B.R. at 512, n. 1 (internal quotations omitted).

On or about June 7, 1999, CSAC received by mail a notice of the Wheltons' Plan and a Notice of Meeting of Creditors. The notice stated that objections to the Plan must be filed by June 24, 1999, and a confirmation hearing was scheduled for June 29, 1999.

Neither CSAC nor ECMC attended the creditors' meeting or objected to the Plan. On June 29, 1999, however, ECMC filed a proof of claim in the amount of $102,882.51.

That same day, the Wheltons filed a First Amended Chapter 13 Plan that increased the dividend on all allowed unsecured claims from 3% to 5%, but otherwise left unchanged the Plan's declaration of undue hardship. Neither the Plan nor the First Amendment names ECMC or CSAC, nor do they identify specific student loans. The "discharge by declaration" language is located under "Other Provisions" and is not highlighted in any way.

On June 30, 1999, the Bankruptcy Court (Conrad, *Bankr.J.*) confirmed the Plan. ECMC did not appeal the confirmation order.

Approximately one year after the First Amendment was confirmed, the Wheltons borrowed money from a family member and paid the full amount due under the Plan. On or about June 27, 2000, ECMC accepted payment under the Plan of $4,997.00.

On July 7, 2000, the Wheltons received their discharge, which specifically provided: "Pursuant to 11 U.S.C. § 1328(a) the debtors are discharged from all debts pro-

vided for by the plan or disallowed under 11 U.S.C. § 502, except any debt ... for a student loan or educational benefit overpayment as specified in 11 U.S.C. § 523(a)(8)." They did not file an adversary proceeding to determine the dischargeability of the student loans. As of the date of their discharge, ECMC was the sole holder of the Wheltons' consolidated loan.

Following the Wheltons' discharge, ECMC attempted to collect the student loan debt by wage garnishment. In a decision dated June 25, 2001, a U.S. Department of Education hearing officer concluded the department could not permit the wage garnishment in contravention of the confirmation order and advised ECMC to seek review of the confirmation order in the Bankruptcy Court.

On July 10, 2001, ECMC filed an adversary proceeding in the United States Bankruptcy Court for the District of Vermont by which it sought to have the consolidated student loan declared nondischargeable. On September 9, 2003, the Bankruptcy Court (Brown, *Bankr.J.*) examined whether the Wheltons' treatment of their student loan debts in their Plan and the purported discharge by declaration effectively barred ECMC, which had never objected to the Wheltons' treatment of its claim in the Plan, from seeking a determination in a subsequent adversary proceeding that those debts had not been discharged. *See* 299 B.R. at 308. Judge Brown found, *inter alia,* "that the discharge-by-declaration provision in Whelton's plan is inconsistent with the Bankruptcy Code, is outside the scope of relief that may be effected by a chapter 13 plan, and should not have been confirmed." *Id.* at 312. In addition, she found "the Debtor's failure to serve a summons and complaint upon ECMC deprived ECMC of proper notice of the Debtor's intent to

discharge the student loan and, hence, constituted an abrogation of ECMC's due process rights." *Id.* at 317.

Consequently, Judge Brown found the discharge declaration was void and of no legal effect. *Id.* at 318. Mr. Whelton appealed the Bankruptcy Court decision vacating the discharge of his student loan debt. On August 4, 2004, the District Court (Sessions, *Ch. J.*), affirmed the Bankruptcy Court "on the grounds that discharge by declaration language in a plan does not effectively except the debt from nondischargeability, and employment of such a process denie[d] the student loan creditor due process." 312 B.R. at 520.

### DISCUSSION

■ While creditors ordinarily are not entitled to personal service before a bankruptcy court may discharge a debt, the Federal Rules of Bankruptcy Procedure provide student loan creditors "greater procedural protection" because these particular types of debts are not automatically dischargeable. *See Tenn. Student Assist. Corp. v. Hood,* 541 U.S. 440, 451, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004). Title 11 U.S.C. § 523(a)(8) establishes the statutory presumption against the discharge of student loans. In pertinent part, it states that a discharge under § 1328(b) "does not discharge an individual debtor from any debt ... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit ... unless excepting such debt from discharge ... will impose an undue hardship on the debtor." 11 U.S.C. § 523(a)(8). In *Tennessee Student Assistance Corp. v. Hood,* the Supreme Court ruled that this presumption is "self-executing" and that "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." 541 U.S. at 450, 124 S.Ct. 1905. The Court further

ruled that "[b]ecause student loan debts are not automatically dischargeable ... [t]he current Bankruptcy Rules *require* the debtor to file an 'adversary proceeding' ... to discharge his student loan debt." *Id.* at 451, 124 S.Ct. 1905 (emphasis added). "[A]s prescribed by the Rules, an 'adversary proceeding' requires the service of a summons and a complaint." *Id.* at 452, 124 S.Ct. 1905 (citing Fed. R. Bankr.P. 7001(6), 7003, and 7004). Whelton plainly did not follow this mandatory procedure. Instead, by employing a discharge by declaration, Whelton attempted to avoid the adversary process to which ECMC was entitled. As the Bankruptcy Court aptly observed, "[t]he inclusion of such a provision in a plan, where it has no legitimacy, constitutes ... 'practice by ambush,'" hardly consistent with the Bankruptcy Court's duty to serve equity. *In re Whelton,* 299 B.R. at 318.

Our sister circuits have split in ruling on the validity of student loan discharges obtained by declaration. The Ninth and Tenth Circuits have acknowledged that such a discharge procedure violates the Bankruptcy Code and Rules; nevertheless, these courts have upheld such discharges where a student loan creditor had notice of the declaration's placement in the plan and failed to object. *See, e.g., Great Lakes Higher Educ. v. Pardee (In re Pardee),* 193 F.3d 1083 (9th Cir.1999); *Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253 (10th Cir.1999). In the view of these courts, the creditor's failure to object to a plan or to appeal its confirmation "constitutes a waiver of [its] right to collaterally attack the confirmed plan postconfirmation on the basis that the plan contains a provision contrary to the Code." *In re Pardee,* 193 F.3d at 1085 (internal quotation marks omitted); *accord In re Andersen,* 179 F.3d at 1257–58 (holding that creditor's failure to object or appeal

from confirmation of debtor's chapter 13 plan precludes subsequent attack; the plan confirmation is final and constitutes *res judicata* as to all creditors, including those holding student loans).

More recently, however, the Fourth, Sixth, and Seventh Circuits have ruled that a discharge by declaration provision is unenforceable as against a student loan creditor. *See Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679 (6th Cir.2005); *In re Hanson*, 397 F.3d 482 (7th Cir.2005); *Banks v. Sallie Mae Serv. Corp. (In re Banks)*, 299 F.3d 296 (4th Cir.2002). As the Seventh Circuit recognized in *In re Hanson*, a debtor inserts conclusory "undue hardship findings" into a discharge by declaration provision in the "hope ... that an unsuspecting bankruptcy court will confirm the plan and that the [student loan] lender will not recognize the discharge by declaration ploy in time to object to confirmation or to file an appeal." 397 F.3d at 484–85. A discharge obtained in this manner, *i.e.*, "without filing an adversary proceeding to establish undue hardship," is plainly "contrary to the express language of the Bankruptcy Code and Rules." *Id.* at 485. Thus, it is properly treated as "void." *Id.* at 487; *accord In re Ruehle*, 412 F.3d at 684 (rejecting finality analysis in *Andersen* and *Pardee* because, *inter alia*, "it ignores the clear intent of Congress and the Judicial Conference" to "require an adversary proceeding" and "it enriches and emboldens those who take what is not theirs and legitimizes it with court sanction" (internal quotation marks omitted)).

This is an ineluctable conclusion, which we hereby adopt as the rule in this Circuit.

Indeed, we note that the Tenth Circuit and a bankruptcy appellate panel of the Ninth Circuit have apparently retreated somewhat from their former contrary view. *See Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*, 382 F.3d 1185, 1188 & n. 2 (10th Cir.2004) (limiting *Andersen* to cases in which a chapter 13 plan includes an express statement of undue hardship and noting that the "panel is of the view that *Andersen* was wrongly decided and should be reconsidered"); *Educ. Credit Mgmt. Corp. v. Repp (In re Repp)*, 307 B.R. 144, 149 n. 9 (9th Cir.BAP2004) (agreeing with Fourth Circuit *Banks* decision and joining "emerging consensus" that discharge by declaration provisions violate creditors' due process rights) [1].

■ Thus, we reject Whelton's argument that the Bankruptcy Court approval of his Plan serves to preclude challenges such as ECMC's. It is true that the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As the Ninth Circuit has held, however, "[a]lthough confirmed plans are *res judicata* to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." *Enewally v. Washington Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir.2004).

■ Under 11 U.S.C. § 1328(a), the Bankruptcy Court lacked the authority to

---

1. Several of our sister circuits have held that due process prevents the bankruptcy court from giving preclusive effect to a discharge-by-declaration provision in a confirmation order entered without the notice specified in the Bankruptcy Code and Bankruptcy Rules. Because we hold that the Bankruptcy Code and Rules render void such a provision, we decline to decide whether *due process* requires that a creditor receive the statutorily required notice.

grant a discharge of Whelton's student loan debt through the ordinary confirmation process. As a general matter, res judicata can only be invoked where (1) there is a previous adjudication on the merits; (2) the previous action involved ECMC or its privy; and (3) the claims involved were or could have been raised in the previous action. *See Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir.2000). Here, it is difficult to see how these claims could have been raised since ECMC lacked proper notice.

 In addition, a debtor who claims "undue hardship" to defeat the statutory presumption against a student loan discharge must make the following, specific factual showing: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living ...; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987) (per curiam). Under the Bankruptcy Code, discharge of student loan debt cannot be adjudicated in a summary proceeding. *Id.* (adopting a three-part test for showing "undue hardship"). These facts were not pleaded or proved by Whelton, nor found by the Bankruptcy Court in awarding him a discharge. Thus, by including a discharge by declaration provision, the debtor has avoided the statutorily required adjudication on the merits which is also necessary for the application of *res judicata. See NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983) ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.").

Furthermore, ECMC did not receive the required notice of the debtor's purported discharge. Under 11 U.S.C. § 523(a):

A discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt-

. . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

 This provision is "self-executing," meaning that "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Hood*, 541 U.S. at 450, 124 S.Ct. 1905. Congress, therefore, specifically required that, to justify the discharge of a student loan debt, "a debtor must establish undue hardship by filing a complaint for an adversarial hearing and serving the creditor with a summons." *In re Ruehle*, 412 F.3d at 681. This the debtor did not do. As the District Court noted, to resolve this matter, the Bankruptcy Rules required an adversary proceeding and "entitle[d] the potential defendant to a heightened degree of notice." 312 B.R. at 516–17. "[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299,

97 L.Ed. 333 (1953). Because Whelton failed to serve ECMC and affirmatively establish such undue hardship in an adversary proceeding, his liability on the loan survives the purported discharge. *See Hood,* 541 U.S. at 450, 124 S.Ct. 1905.[2]

## CONCLUSION

By failing to comply with 11 U.S.C. § 523(a)(8) and initiate adversary proceedings with proper service of a summons and complaint, the debtor did not provide ECMC adequate notice of his attempt to discharge his student loan debt. The decision of the District Court is therefore AF-FIRMED.

---

**2.** Whelton also argues that ECMC's challenge to the discharge was untimely. He notes that the Bankruptcy Code permits revocation of a confirmation order only if the request is made within 180 days of entry of the order, whereas the present action was filed more than two years after confirmation. This action is not, however, an action to revoke a confirmation order, but rather to declare one of the provisions of a confirmed plan void *ab initio.* Accordingly, ECMC was bound only by the "reasonable time" limitations of Rule 60(b)(4), which have been interpreted permissively. *See Beller & Keller v. Tyler,* 120 F.3d 21, 24 (2d Cir.1997) ("[I]t has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void may be made at any time.")(internal quotations omitted).